## Lee's Admr. v. Hines, Director General of Railroads.

(Decided February 26, 1924.)

### Appeal from Bell Circuit Court.

1. Railroads—Evidence of Negligence as to Child Held Insufficient for Jury.—In action for death of child struck by train, evidence held not sufficient to entitle plaintiff to have the question of negligence submitted to the jury.

2. Railroads—Law Imposes no Duty on Trainmen to Protect Adults or Infants Sitting or Lying on Track.—The duty of trainmen to exercise precaution where railroad track is used as a walkway does not impose such duties for the protection of a person that may be sitting or lying on a railroad track used as a walkway by the public, whether the person on the track be an adult or infant of tender years, and no recovery can be had except upon the ground of "discovered peril."

3. Railroads—Persons Sitting or Lying on Track Trespassers En-titled Only to Ordinary Care After Peril is Discovered.—Persons sitting or lying on railroad track, even where its use as a walk-

way by the public is expected and licensed by the railroad company, are trespassers, to whom trainmen owe no duty to maintain a lookout for their presence on the track or give signals of the movements of the train, but are only bound to use reasonable or ordinary care to prevent injury to them after their peril is discovered.

JOHN HOWARD for appellant.

WM. LOW and B. D. WARFIELD for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action was brought in the court below by the appellant, H. Clay Rice, as administrator of the estate of William L. Lee, deceased, against the Louisville and Nashville Railroad Company, seeking the recovery of damages for the death of his intestate, an infant fifteen months old, alleged in the petition to have been killed by one of its trains at Shamrock, a mining camp or village, in Bell county, this state, through the negligence of its servants in charge of the train. Later, and after the filing of an amended petition setting forth the necessity therefor, the action was dismissed as to the Louisville and Nashville Railroad Company, and Walker D. Hines, Director General of Railroads of the United States, substituted as defendant, who, upon being summoned, filed an answer specifically denying all the averments of negligence on the part of the railroad company's servants in charge of the train contained in the petition, and alleging that the parents of the deceased infant, William L. Lee, viz.: Albert Lee and Theodocia Lee, as his only heirs at law, would take equally any recovery that might be had in the case, and that in the matter of the death of their infant son, "they were guilty of negligence which contributed to and brought about the injury and death of the said Wm. L. Lee, and that but for the negligence of the said parents of the said Wm. L. Lee, he would not have been struck by said train or killed." By agreement of the parties the affirmative matter of the answer was controverted of record.

On the trial of the case the appellee, at the conclusion of the appellant's evidence, moved for an instruction peremptorily directing a verdict in his behalf. The trial court then overruled the motion, but upon its being renewed at the conclusion of all the evidence, sustained it, and thereupon instructed the jury to return a verdict for

the appellee, which was done as directed. The appellant filed a motion and grounds for a new trial. The motion was overruled and judgment entered in conformity with the verdict. That action of the trial court resulted in this appeal.

After the granting of the appeal Walker D. Hines was succeeded as Director General of Railroads by John Barton Payne, and though an order seems to have been entered in this court substituting Payne in that capacity for Hines as a party to the appeal, the name of the latter still appears on its docket as the appellee.

The appellant seeks the reversal of the judgment of the trial court on the following grounds, viz.: Error committed, as alleged, by that court to the prejudice of his substantial rights. (1) In directing the jury, by an instruction to that effect, to return a verdict for the appellee. (2) In failing to properly instruct the jury. Obviously, the action of the trial court first assigned as error, involves the crucial question presented for decision on the appeal. For if we should hold that action reversible error, it would go without saying that the failure of the court to submit the case to the jury under proper instructions, also complained of by the appellant, would likewise have to be declared reversible error. On the other hand, if we should hold that the action of the court in directing the jury to return a verdict for the appellee was not error, it would equally follow that its failure to submit the case to the jury would not, and could not be, declared error. So it is manifest that the decision of the question first presented will be decisive of the second.

As the record does not contain a plat or map of the scene of the accident, or the surrounding premises, only an approximately correct description thereof can here be given. But we gather from the pleadings and bill of evidence found in the record, that Shamrock, the place where it occurred, is one of several mining camps or small unincorporated villages, situated at intervals of a mile or two along the line of the Louisville and Nashville Railroad in Bell county, at each of which a coal mine is operated. The inhabitants of these villages are employees at the mines and their families. At Shamrock there is a coal mine owned and operated by the Climax Coal Company, whose employees, with their families, occupy the dwelling houses of that village. There are about twelve houses, exclusive of the commissary or store of the

coal company, and one other house and a school building; the commissary being situated at one end of the village and the single house and school house across Stony creek, at the other. The commissary and twelve dwelling houses are situated on one and the same side of the railroad track, half of the houses fronting the railroad track and the others immediately in the rear of those in front. Between the front row of houses and track is a wagon road which also runs between the commissary and track, while across on the opposite side of the railroad track from the houses and commissary is a corn field, between which and the track there is no roadway. The house in which the infant decedent and his parents were residing at the time of his death was the fifth in the row fronting the railroad track.

It also appears that the railroad track at Shamrock is a spur track running from the railroad company's main line, and trains entering upon it are operated with the tender in front instead of behind the engine. The train by which the infant decedent was killed, consisting of three passenger coaches, a baggage car, engine and tender, was being operated in this manner when the accident occurred. At or about the point of the railroad track's entrance of the village, there is a crossing where it is intersected by the wagon road previously described as lying between it and the dwelling houses and commissary. Near this crossing is a trestle and below the trestle a sharp curve in the track, beyond which there is a considerable stretch of straight track, and a train going in on the track, after passing over the crossing and trestle, must run out of and below the curve, to bring in its engineer's or fireman's range of vision any part of the railroad track at, or contiguous to, the place where the infant decedent was killed.

The specific acts and omissions of duty alleged in the petition constituting the negligence on the part of the servants of the Louisville and Nashville Railroad Company complained of as causing the death of the appellant's intestate, are that they ''so negligently managed and operated said train that it was run against plaintiff's intestate, William Lee, knocking him against a telephone pole; and so bruised, crushed, maimed and wounded him that he died the following day in a hospital in Middlesboro.'' . . . After then setting forth in the petition that at the place where the accident occurred the railroad track is used day and night as a walkway by

the public with the knowledge and acquiescence of the railroad company, it was futher alleged that the latter "by and through its agents and servants in charge of said train failed to give any alarm, either by ringing the bell of the engine, or by the whistle of same, to the plaintiff's intestate; and in thus failing and neglecting to give any alarm, the engine struck the plaintiff's intestate causing the injuries aforesaid from which he died the following day. . . . That if defendant company's agents and servants in charge of said train had given the proper alarm, or had the train under the proper control, it could have avoided the injury and consequent death of plaintiff's intestate."

It will be observed from a careful reading of the foregoing averments of the petition, that none of them contains a charge of negligence arising out of any failure of the engineer or fireman to maintain a proper lookout from the train as it approached the place of the accident; or that the death of the infant decedent was caused by the negligence of either or them in failing, after discovering his presence on the track and consequent peril, to use ordinary care to prevent the train from striking him. The only negligence alleged was as to the manner of operating the train and failure to give the usual signals of its coming; and, obviously, the charge of a failure to give the train signals, is but a specification of an element or feature of the negligence respecting the manner of operating the train, previously alleged.

The appellant's right of recovery is based on the theory that as the residents of Shamrock and adjacent mining camps, notwithstanding the existence of a bordering roadway extending through that village, have for many years and in great numbers, with the knowledge and acquiescence of the Louisville and Nashville Railroad Company and its train employees, made daily and habitual use of its railroad track at and contiguous to the place where the infant decedent was killed, as a walkway, such state of case imposed upon those operating the train by which the infant decedent was killed, the duty of anticiptaing the presence of persons on the track where so used and to maintain a lookout, keep the train under control and give the customary signals to warn them of its approach, none of which duties, it is argued, was performed.

The evidence in respect to the use of the railroad track by the public as a walkway at the place where the

infant decedent was killed, was substantially one way; all being to the effect that such use was daily and habitual and of several years' continuance. Some of the witnesses said that it was used by 200 persons a day.

As to the duty of maintaining a lookout, it may be remarked that if it should be conceded it was unnecessary for the petition to allege a failure on the part of the appellee's servants to perform such duty, by reason of its nonperformance being included in the charge of negligence in operating the train first alleged in the petition, it should be said that no witness introduced in behalf of the appellant testified that either the engineer or fireman failed to maintain a lookout; and they both testified that each of them maintained such lookout and were doing so when and before the infant decedent was struck by the train.

With respect to the character of the railroad track, speed of the train and whether there were any signals given of its approach, the evidence was substantially as follows: Of the seven witnesses introduced by the appellant three of them, Albert Lee and Theodosia Lee, parents of the infant decedent, and Mrs. Quellen, testified that they did not see the train strike the child or see the train until after the child was injured. They heard it coming but no signal from its whistle or bell. Albert Lee also testified that from the end of the curve in the track to where the child was struck by the train, a distance of about 300 yards, the track was straight and the view unobstructed.

Three other witnesses, Mrs. Mays, Mrs. Doyle and Mrs. Marsee, testified that they saw the train and that it was running fast. Mrs. Doyle and Mrs. Marsee said it gave no signal with bell or whistle. Mrs. Mays testified that she saw the train at the trestle and heard the whistle blow as it left the crossing just beyond the trestle, but that it gave no other signal. Eph Moore was a passenger on the train standing on the steps of a coach, preparatory to getting off, when the child was struck by the train, but did not witness the accident. He said the train was running a "little bit fast," and that in approaching the child the track was straight for as great a distance as four telephone poles. Myer, an employe of the Climax Coal Company, testified that he was on the way to the commissary when the train arrived, and that it was running tolerably fast, but he had seen it run faster. That he did not hear the train blow its whistle, but it might

have done so; and that from the end of the curve to where the child was struck, the track is straight for 300 yards. Southern fireman and Griffin engineer of the train, witnesses for the appellee, testified that the train signaled its approach by giving at the crossing two long and two short blasts of the locomotive whistle; that each of them maintained a constant lookout in approaching the place of the accident and ran the train at a speed of ten to fifteen miles an hour.

It will be seen that the appellant's witnesses, in testifying as to the speed of the train at the time of the accident, gave no estimate of the number of miles per hour they believed it to be running, but confined themselves to an expression of opinion that it was running "fast," or "very fast." The only estimate of the train's speed found in the evidence was that fixing it at ten to fifteen miles an hour given by its engineer and fireman, whose control of its movements and experience in railroading ought to have enabled them, better than all others, to accurately know its speed. In looking to the evidence for the purpose of ascertaining the position of the infant decedent when struck by the train, his previous conduct and the circumstances that caused his peril and resulted in his death, we find that it shows his presence at his home with his mother and a visitor, Mrs. Quellen, only a few minutes before his injuries were received. Both the mother and Mrs. Quellen testified that while they were on a back porch engaged in conversation the child, who was standing by his mother when the conversation began, unnoticed by them, wandered from the house and was not again seen by them until after he was injured by the train. At that time the front and back doors and all windows of the house were open. He was next seen by the witness, Mrs. Doyle, as she passed the Lee home immediately before the appearance of the train. But, though positive in her statement that she saw the child at the Lee home as she walked by it on the railroad track, Mrs. Doyle was unable to recall whether he was then in the house or yard. She did not again see him, however, until after he was struck by the train, which came down the railroad track when she reached the curve near and above the Lee house. The witness, Myer, who lived in the fourth house from the Lee house, testified that he came out of his house to go to the commissary by walking the railroad track and reached the track at a point about 75 yards from where the train struck the child; but that

he did not then, or thereafter in walking by the Lee house on the railroad track, see the child, or see him at all, until he was struck by the train and knocked from the end of the ties at a distance of 100 yards from the witness, which occurrence he by chance witnessed by happening to turn his face back in that direction; and that even then, he thought th eobject he saw knocked from the track by the train was a newspaper, but immediately discovered it was the child.

Yet another witness, Mrs. Mays, some of whose testimony has received previous mention, also testified that as the train was approaching she saw the Lee child when the train got to him and when it struck him. She expressed the opinion that he was then "the length of fifteen rails" from her; and, as according to other evidence in the record a rail is thirty feet in length, the child was struck by the train at a distance of 450 feet, or 150 yards from her. When interrogated on cross-examination the witness gave a more particular account of her discovery of the child and his position when struck by the train, saying, in substance, that the object she saw was on a tie and that she first thought it was a child, and next thought it might be the dirt road, but that "then it was struck, and I saw it was the child." The witness further stated that when approached and struck by the train the child was sitting on the end of a tie, which necessarily was outside of the iron rail; and that such was the position of the child was verified by the presence on a tie outside of the rail, of a discharge from the child's bowels caused by the impact of the train with his body; and this discharge was observed by and mentioned in the testimony of Mrs. Mays and other witnesses who went to the place of the accident immediately following its occurrence.

The testimony of the appellant's witnesses, Myer and Mrs. Mays, definitely showing that the infant decedent was seated on the end of a cross tie of the railroad track when struck by the train, was confirmed in all essential particulars by the testimony of the fireman and engineer of the train; that of the fireman being to the effect that, although he maintained a lookout on the track in approaching the place of the accident, he did not see the child until the engine got within three car lengths of him. That the child was "on the outside of the rail sitting down," and such was his position when struck by the train; that upon seeing him he (the fireman) im-

mediately said to the engineer, "Lookout, we are going to kill a child." Whereupon the engineer "instantly threw the brake in emergency and reversed the engine," which had the effect to stop the train and did stop it by the time the engine got three car lengths beyond where the child was struck; that nothing more could have been done to stop the train, nor could it have been sooner stopped. The testimony of the fireman was fully corroborated by that of the engineer, with the additional statement that, though he kept a lookout on the track in front of the train, from his position in the cab of the engine he was prevented by the tank, or tender, from obtaining a view of the place of the accident as the train approached it, and did not see the child until after the train struck him; nor did he have any knowledge of his previous peril until informed of it by the fireman, upon receiving which information he took instant action to stop the train as testified by the fireman.

It appears from the testimony of the parents of the child, that though healthy and vigorous he was smaller than the average child of his age. It was also stated by the father that when struck by the train he was wearing a short dress of dark color. Mrs. Quellen, who was with the mother when the child wandered from the house a few minutes before his injuries were received, seems to have been the only other witness interrogated as to his apparel, and while she was not positive as to the color of the dress he was wearing, it is fairly apparent from her statement it had become so soiled by the wearer in play that its natural color was well nigh indistinguishable; and if such was its appearance, or it was of a dark color as stated by the father, in either case, with the diminutive child seated on the end of a tie of the railroad track outside of the rail, there reasonably could not have been such difference, or so marked a contrast, between the color of his apparel and that of the ties and other parts of the track and road bed on either side of and behind him, as would readily have enabled an observer, whether looking from the engine of an approaching train, or as a pedestrian from a point of view up or down the railroad track, to discover such an object, or if discovered, to know it was a child. It cannot, therefore, occasion surprise that the appellant's fireman did not discover the presence of the child on a tie of the track until within three car lengths of him.

The evidence is silent as to the time that intervened between the departure of the infant from his home and his collision with the train, but the interval must have been brief, as the accident occurred only a few yards from the home and before his mother and her visitor, Mrs. Quellen, discovered his escape from the house. Nor does it appear from the evidence when he got on the railroad track, that he was ever on it elsewhere than the end of the tie where he was sitting when the train struck him, or how far the train was from him when he reached that point and seated himself on the tie.

It is manifest from the record that the appellant was not entitled to have the case submitted to the jury upon the ground urged by him. For though it be conceded that the evidence showed such use by the public of the railroad track as a walkway at the place of the accident, with the knowledge and acquiescence of the railroad company, as by law imposed upon those operating the train in approaching with it the place of the accident the performance of all the precautionary duties alleged in the petition, for the purpose of warning persons that might be there using the track as a walkway of the immediate coming of the train and protect them from injury therefrom, but it is nevertheless true that the law does not impose upon those in charge of the train performance of the precautionary duties referred to, for the protection of a person that may be sitting or lying on the railroad track so used as a walkway by the public; and under the decisions of this court, as well as the weight of authority elsewhere, this is so, whether the person sitting or lying on the track be an adult or infant of tender years. And where one so occupying the railroad track, whether at a place where it is habitually used as a walkway by the public with the knowledge and acquiescence of the railroad company, or a public crossing, is injured or killed by a train, there can be no recovery for the injury or death, except upon the ground of "discovered peril." That is to say, to authorize the recovery it must be shown by the evidence that the presence on the railroad track and consequent peril of such person was discovered by the servants of the railroad company operating the train, or some of them, in such time as would have enabled them, by the use of ordinary care, to prevent such injury or death.

As will presently be seen, the authorities make no distinction between persons who sit or lie on a railroad

track at points where its use as a walkway by the public
is expected and licensed by the railway company, and
persons who sit or lie upon the track, or attempt to use
it as a walkway where its use as a walkway is neither
licensed by the railroad company nor the presence on the
track of the persons so using it is to be anticipated by the
servants of the company charged with the duty of op-
erating its trains. In either case they are treaspassers
to whom the train men owe no duty to maintain a lookout
for their presence on the track, or give signals of the
movements of the train, but are only bound to use rea-
sonable, or ordinary, care to prevent injury to them after
their peril is discovered.

One of the earlier cases thus holding was that of
Louisville and Nashville Railroad Company v. Logsden's
Admr., 118 Ky. 600, in which the recovery of damages
was sought for the killing by one of the defendant's
trains of the plaintiff's intestate, an infant under three
years of age. In reversing the case we substantially
held, Judge Hobson writing the opinion, that the place
of the accident was at a point on the track where the in-
fant had no right to be and that the train men were under
no duty to anticipate his presence on the track or to main-
tain a lookout for same; and furthermore that as the evi-
dence of the plaintiff failed to show that the presence or
peril of the infant was discovered by the train men in
time to have prevented the train from striking him, the
trial court should have instructed the jury peremptorily
to find for the defendant. In the opinion it is, in part,
said:

"It is conceded that under the repeated adjudi-
cations of this court there could be no recovery for
the death of an adult under the proof. But it is in-
sisted that a different rule applies to a child of such
tender years. The evidence is not sufficient to show
that the train men in fact saw the child in time to
have saved him. The only ground for recovery is
that if they had been on the lookout and had exercised
proper care, they might have seen him in time to stop
the train before striking him. In towns or cities, or
where for any reason the presence of persons on the
track should be anticipated, it is the duty of rail-
road men to keep a lookout in front of moving trains;
but at other parts of the road they are under no ob-
ligation to keep a lookout for trespassers on the

track, but only to use all reasonable care to prevent injury to them after their peril is discovered. The reason for the rule is not that the person injured is guilty of contributory negligence in placing himself on the track or in the place of danger. The rule rests on the ground that the railroad company owes him no duty until his peril is discovered. . . . "

Again it is said in the opinion, quoting with approval from the opinion in the case of Givens, Admr. v. Kentucky Central Railroad Co., 12 Law Rep. 950:

"They (the train men) are not required to presume that anyone will trespass upon the right of way of the company and they are therefore not bound to be on the lookout for trespassers, but only to avoid injury to them if possible, when their presence and liability to danger become known. This rule applies in the case of a child just as it does in that of a grown person. If those operating a train were required to lookout and guard against danger to children trespassing upon the track, then this would necessarily afford an opportunity to see all other persons who might be upon it and in danger. Undoubtedly a greater degree of care is required of them as to children not old enough to be aware of the danger than as to grown persons, when they have been once discovered upon or near the track; but, until their presence is known, the rule applies equally to both. . . . McDermott v. Ky. Central Railroad Co., 93 Ky. 408; Goodman's Admr. v. L. & N. Railroad Co., 116 Ky. 900.

In McKnight's Admr. v. L. & N. Railroad Co., 168 Ky. 86, the recovery of damages was sought for the killing of an infant, twenty-three months old, by a train. The facts being well-nigh identical with those in L. & N. Railroad Co. v. Logsden, Admr., *supra,* and the grounds urged for the recovery the same. We affirmed the judgment of the lower court, which was based upon a directed verdict for the defendant. The opinion, after a careful review of numerous authorities, reaffirmed the doctrine announced in L. & N. Railroad Co. v. Logsden, *supra.* Again in Spiegle, by, etc. v. C. N. O. & T. P. Ry. Co., 170 Ky. 285, the plaintiff, an infant nineteen months old, sued by his father as next friend, to recover damages for injuries sustained in a collision with a train

at or near a private crossing. We held that a verdict for the defendant was properly directed by the trial court, resting the decision upon the same grounds set forth in the case of L. & N. Railroad Co. v. Logsden's Admr., *supra.*

In Chesapeake & Ohio Ry. Co. v. Price's Admr., 179 Ky. 533, we held that damages were not recoverable for the killing of an eighteen months old infant by a train, near a private crossing, for the reason stated in the several cases, *supra,* viz.: that the infant being a trespasser, there was no duty upon those in charge of the train to keep a lookout for her presence on the track, and that the evidence conclusively showed that the trainmen used every means available to stop the train after discovering the peril. It is patent from the authorities considered and others therein cited that it is the clearly recognized doctrine in this jurisdiction, that though an infant of tender years cannot be guilty of contributory negligence in the legal acceptation of that term, nevertheless when such infant is injured by a train because of placing himself or herself on the railroad track in a situation that, if occupied by an adult would make the latter a trespasser, in such case the infant must be regarded a trespasser in measuring the duty of the railroad company.

It is also equally well settled that one who sits or lies down on a railroad track, though at a point where persons are accustomed to use the track in large numbers as a walkway or are licensed to do so, is a trespasser, whether he be an adult or an infant of tender years. For the duty of lookout, warning and control which the law imposes upon railroad companies in favor of licensees applies to persons using the track as a footway and will not be extended so as to include sleepers or persons sitting or lying upon the ties or tracks. The authorities supporting this proposition are also numerous, some of which are here cited: Cornett's Admr. v. Lou. & Nash. R. R. Co., 181 Ky. 132; Lyons' Admr. v. I. C. R. R. Co., 22 Rep. 1032; L. & N. R. R. Co. v. Bays' Admr., 142 Ky. 407; Bevens v. C. & O. Ry. Co., etc., 190 Ky. 501; L. & N. R. R. Co. v. Smith's Admr., 186 Ky. 32. Application of the rules of law stated to the facts of the case at bar leaves no doubt of the correctness of the trial court's action in directing a verdict for the appellee.

As has been stated, the appellant does not plead, or in the argument of counsel, rest his right of recovery upon the ground of "discovered peril." But if it could

be said that this ground is to be implied from such acts of negligence on the part of the appellee's trainmen as are alleged in the petition, still the proof fails to show any right in the appellant to recover on such ground. There were but two witnesses who saw the child sitting on the end of the tie before the train struck him, viz.: Mrs. Mays, the appellant's witness, and Southern, the engine fireman, and they testified, the latter most positively, that when they first saw the child the engine and tender were close upon him, Southern and the engineer also declaring that the train was then too close to the child to be stopped before it struck him; and the testimony of the three witnesses mentioned is wholly uncontradicted in any particular.    It therefore conclusively appears from the evidence that the train could not have been stopped after the discovery by the fireman of the child's presence on the tie in time to have prevented the train from striking him.

The conclusions we have expressed make it unnecessary for us to consider the question of imputed negligence raised by the answer of the appellee.  So whether the mother of the infant, by the exercise of due care, might or could have prevented the child from wandering from his home and getting upon the track is not passed on.

Our view of this case cannot better be illustrated than by closing the opinion with the following excerpt quoted from that of McKnight's Admr. v. L. & N. R. R. Co., *supra*:

> "This, and all like cases, are indeed sad ones, and if the human side of the court only had to deal with them a forgetfulness of the law might say to permit a recovery; but, as we have seen, there is no difference in the rule, whether adults or infants are involved, and howsoever much sympathy for the innocent child may be engendered in the breast of the court, it furnishes no reason for disregarding the plain and well established mandates of the law as applicable to the facts.  We have given the facts herein, as well as the law applicable to them, careful consideration, and we are unable to see that the court erred in giving the peremptory instruction to find for the defendant."

Judgment affirmed, the whole court sitting.