**MIDLAND VALLEY R. CO. v. KELLOGG et al.**

No. 15470—Opinion Filed Feb. 17, 1925.

1. **Railroads—Injuries to Persons on Tracks—Licensees—Use of Footpath.**

When it is proven that a railroad track has been used, continuously and openly, as a footpath by the general public for a number of years, without objection, a question of fact is presented to the jury to determine whether the railroad company has acquiesced in such use—thus granting a license therefor.

2. **Negligence—Rights of Licensee.**

A licensee can exercise only the rights and privileges granted by the license.

3. **Railroads—License to Use Track as Footpath—Infants.**

The privileges granted by license to the general public to use a railroad track as a footpath extend to infants equally with other persons.

4. **Same—Extent of Duty of Care by Railroad.**

In the case of a bare or mere licensee, being one whose presence on the premises is merely tolerated, the company, as in the case of a trespasser, owes no duty except not wantonly or willfully to injure such person after his perilous position is discovered.

5. **Same.**

In the case of a licensee, who is on the premises by invitation, express or implied, the company is required to exercise that degree of care and watchfulness, to protect against injuring such person that is commensurate with the probability that such person may be upon its track at that point.

6. **Negligence—Liability—Causal Connection.**

Negligence alone is not sufficient to constitute a cause of action, but the negligence must be the proximate cause of the injury.

7. **Insufficiency of Evidence.**

Record examined, and held, that the evidence is speculative and is not sufficient to support the verdict and the judgment of the trial court.

(Syllabus by Jarman, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Tulsa County; Albert C. Hunt, Judge.

Action by W. H. Kellogg and Alice L. Kellogg against the Midland Valley Railroad Company. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

O. E. Swan, Christy Russell, and Blakeney & Ambrister, for plaintiff in error.

Robinett & Ford, for defendants in error.

Opinion by JARMAN, C. This action grew out of the following circumstances:

Francis Pearl Kellogg was 16 months old and was at her grandmother's home, which is located in the town of Avant and at the southern boundary thereof, and is on the west side of the track of the defendant, and at a distance of about 75 feet therefrom. Citizens residing in the neighborhood of this home used the track of the defendant as a footpath in going to and from the business portion of the town of Avant, and it was also used by the school children in that section of town in this manner in going to and from school. There was a rock crushing plant, having between 50 and 100 employes, and other public enterprises south of the home of the grandmother, and the employes of these institutions and their fam-

ilies used the track of the defendant as a footpath in going to and from the town of Avant. The track was used in this manner by the public generally, notoriously, and continuously, without objection by the defendant, for a number of years. Just at the edge of the town of Avant and immediately south of the home of the grandmother, there was a public road running east and west by her home and across the track of the defendant. At about two o'clock p. m. on a day in December, this child left the home of the grandmother and went down the public road to the track of the defendant, which was the way used by pedestrians generally in going to the track, and, after going on the track, this child toddled up the same in a northerly direction toward the town of Avant for a distance of about 60 feet, when a little cousin of the child attempted to get it off of the track to prevent its being injured or struck by the train approaching from the south, but, being unable to do so, the child was killed by said train. At the point where the child was killed, the track was practically straight and the view was unobstructed for a distance of from 400 to 600 feet in the direction from which the train was approaching. This action was brought by the parents of the child to recover damages for the alleged negligent and wrongful killing of said child; it being contended by the plaintiffs that the track of defendant, at and for a long period of time prior to the death of the child, had been used by the public generally, notoriously, and continuously as a footpath, at the point where said child was killed, with the knowledge and consent of the defendant, and that, under the circumstances, said child was a licensee, to whom the defendant owed a lookout duty, which it failed to maintain, resulting in the train not being stopped in time to prevent the killing of said child. Judgment was for the plaintiffs, and the defendant has appealed.

The first assignment of error, urged by the defendant, is that the court erred in overruling its demurrer to the evidence of the plaintiff, and in refusing to instruct a verdict for the defendant. The defendant contends that the child was not a licensee under the foregoing facts but a trespasser; that no lookout duty was required and that the only duty the defendant owed the child was to not wantonly or willfully injure it after its perilous position on the track was discovered. Under this proposition. the defendant contends that there is no evidence to show that it consented to or acquiesced in the using of its track as a footpath by the public, and that there is no evidence to

show that the use of its track in this manner was done with the knowledge of the defendant. The fact that the track of defendant had been used notoriously, continuously. and habitually by the public for a number of years without objection on the part of the defendant is sufficient to authorize the jury in finding that the defendant had acquiesced in the use of its tracks as a footpath by the public. Wilhelm v. M., O. & G. R. Co., 52 Okla. 317, 152 Pac. 1088.

It is next contended that if the testimony with reference to the use of the track by others was sufficient to create an implied license, it was only to use the track as a passageway and, therefore, the child was not a licensee for the reason that it was not using the track as a passageway. In other words, if the continued use of the track as a footpath by the public, as above set out, created an implied license to use the same, then the privilege granted by such license extended only to the use of the track as a footpath by persons going to and from the town of Avant and to children in going to and from school, and since this child was not using the track for any of these purposes and in fact was not using it for any specific purpose but was aimlessly toddling down the track, the defendant contends that the implied license to use the track did not extend to the child under the circumstances. It is true that a licensee can only exercise the rights and privileges granted by the license. The defendant cites a number of cases in support of this contention and to the effect if the railroad acquiesced in the use of its track by the public as a footpath so that persons using the track for such purpose became licensees, yet, if a pedestrian sits on the track or lies down on the track he becomes a trespasser to whom the road owes no other duty than to not wantonly or willfully injure him after discovering his peril. Counsel for defendant rely strongly upon and quote at length from the case of Lee v. Hines, 259 S. W. 338, a recent Kentucky case. There a 15 months' old child wandered onto the track and was run over and killed by a train. At the point where the child was killed the track had been used continuously by the general public as pathway for a number of years. The child had gone on the track and had sat down on the end of a tie and was in this position at the time it was struck by the train; and the court held that the license to use the track as a footpath did not extend to persons using it to sit on the track, and that such person was a trespasser, and the company

owed only the duty not to willfully or wantonly injure the child after its perilous position was discovered. We do not think this case, or the other cases of similiar import cited by the defendant, support its contentions here. The court, in the case of Lee v. Hines, supra, did not hold that the child was a trespasser for the reason that it was a child and did not understand just why it went upon the railroad track and did not have any definite objective in view at the time it went on the track, but because the track was not being used by the child for the purpose that the company licensed it to be used by the public. The same thing would have been true and the same conclusion would have been reached by the court if the child had been a grown person in possession of all of his faculties. The lookout duty devolves upon the operators of the train for the reason that the presence of persons upon the track may be reasonably anticipated; this duty extends to that class of persons known as licensees. Under the record in this case the defendant owed a lookout duty to persons, using the track of the defendant as a footpath at the point where the child in question was killed, as licensees. This child was using, at the time it met its death, this track as a footpath or walkway, which was a privilege granted to the public generally by the defendant, and, therefore, the defendant owed this child a lookout duty, as a licensee. If this child could be excluded from the class of licensees by reason of its tender years and immaturity and by reason of its not having any specific objective in view at the time of entering on the track, then, by the same course of reasoning, any person out for a walk or who might be strolling down the track for recreation or pastime would likewise be excluded from the class of licensees. What difference does it make, with reference to the proper operation of the trains, whether the person using the track as a footpath or walkway has any specific objective in view, and how can the operators of the train know whether persons, walking down the track, have any specific objective in view? But the operators of a train do know, when a person is sitting or lying on the track, that the railroad company never gave license to the public to use the track for that purpose, and such persons are trespassers and no lookout duty is owed to them.

The further contention is made by counsel for defendant that, even if the child in question were a licensee, the only duty devolving upon the company was to not willfully or wantonly injure the child after its perilous position was discovered, and cite in support of this contention the cases of A., T. & S. F. R. Co. v. Cogswell, 23 Okla. 181, 99 Pac. 923; Midland Valley R. Co. v. Littlejohn, 44 Okla. 8, 143 Pac. 1; and T., O. & E. R. Co. v. McCarroll, 80 Okla. 282, 195 Pac. 139.

Counsel for defendant complain of the rule announced in the case of Wilhelm v. M., O. & G. R. Co., supra, which has been followed by this court in a number of decisions—said rule being that the railroad company is bound to exercise that degree of care and watchfulness to protect against injuring a licensee that is commensurate with the probability that persons may be upon its track at the point in question. It is contended that there is a lack of harmony in the line of decisions, adhering to the rule announced in the Wilhelm Case, and the rule announced in the Cogswell Case, supra. The conflict between these lines of authority is not as real as it seems. In the Cogswell Case and other decisions following the same, the party in question was a bare or mere licensee, whose presence on the premises was merely tolerated, and people in large numbers were not accustomed to use the track as a footpath or roadway at all times of the day, openly and notoriously, which would cause the company to anticipate the presence of persons on the track at the point in question, by reason of an implied invitation, as in the case at bar. The railroad company owes a bare licensee the same duty as a trespasser, and that is not willfully or wantonly to injure him after his perilous position is discovered, but this rule does not obtain in the case of a licensee, being one who is on the premises by invitation, express or implied. This marks the distinction between these two lines of decisions.

In this case the jury was warranted in finding that the child in question was on the track by implied invitation, and, therefore, a licensee; and the foregoing rule, as announced in the Wilhelm Case, supra, is applicable, and the company was required to maintain a lookout and to exercise ordinary care to prevent injuring persons whose presence on the track at this point might be reasonably anticipated.

As to whether the employes of the defendant did maintain a lookout, we have no way of determining from the record. The only evidence tending to shed any light on this question is that the track was straight at this point at a distance from 400 to 600 feet; the grandmother heard the screaking of the brakes immediately before the train

stopped and the train was stopped after two or three cars had run over the child. There was no evidence to show in what distance the train could have been stopped. As far as this record shows, the train was stopped as soon as it could have been after the child was discovered upon the track by the keeping of a proper lookout. To sustain this verdict, we will have to presume, in the first place, that the employes of the defendant did not maintain the proper lookout, or, if they did maintain a proper lookout, that they did not do their duty in attempting to stop the train in time to keep from striking the child, and we will, further, have to presume that the train could have been stopped by the exercise of ordinary or reasonable care before striking the child. This verdict is based purely upon conjecture. Negligence cannot be inferred, but must be proven, and the negligence that is proven must be the proximate cause of the injury.

For the reasons assigned, the judgment of the trial court is reversed and the cause remanded for a new trial.

By the Court: It is so ordered.