## Commonwealth v. Henderson's Guardian.

(Decided October 18, 1932.)

BAILEY P. WOOTEN, Attorney General, GARDNER K. BYERS, Assistant Attorney General, and E. POE HARRIS and THOMAS BURCHETT for appellant.

WAUGH & HOWERTON, and MORRIS & JONES for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing.

Pursuant to an enabling act passed at the 1930 session of the General Assembly of Kentucky, George Roper, Jr., as guardian for Claude Henderson, an infant, instituted this action against the commonwealth seeking to recover damages for personal injuries to the ward, caused by the explosion of dynamite caps alleged to have been negligently left exposed by employees at the state garage in Ashland. Trial before a jury resulted in verdict and judgment for plaintiff in the sum of $6,000, and the commonwealth has appealed.

It is first argued as ground for reversal that the court erred in not sustaining appellant's motion for a

peremptory instruction, and, while other grounds are argued, the conclusion we have reached renders it unnecessary to discuss the other grounds.

The essential facts established by pleadings, stipulations, and proof are substantially these:

The commonwealth owns a lot on the south side of Greenup Avenue and between Twetny-Sevnth and Twenty-Eighth Streets in the city of Ashland, improved by a building which is used by the State Highway Commission of Kentucky as a garage, and in which it stores and repairs its machinery. To the east and adjoining this lot is a lot and garage owned by Boyd county; there being a space between the buildings three or four feet in width. The buildings front toward but about 30 or 40 feet back from Greenup Avenue. The approach to the state garage from the avenue is paved with concrete, and in the intervening space there are two gasoline pumps. As we gather from the evidence, these pumps are near the building and between the side of the door and the corner of the building next to the county garage. It also appears that the State Highway Commission has for some years made use of the county garage under a lease or some arrangement whereby the county continues to use a portion of it for storage of county machinery and materials to which county employees have access.

On March 4, 1929, Claude Henderson, who was then 15 years of age, and a companion, Wade Adams, also an infant, but somewhat younger, were, as was their usual custom when not attending school, going about over the city with a pushcart which they had improvised, gathering such materials as are usually purchased by junk dealers. About 6:30 o'clock p. m. their quest led them to the premises of the state garage, where, in the absence of any state employee, and without invitation or permission so to do, they proceeded to gather and appropriate such materials found as suited their purpose. They testified that, in searching through a heap of refuse between the garage and the gasoline pumps, they found some rags, pieces of copper wire and automobile springs, and three dynamite caps. They then went back into an alley, where young Henderson, with two of the caps in the palm of his hand, used a match to remove some dirt from the other cap held between his thumb and fingers. The caps

were thus caused to explode, and so lacerate his left hand as to necessitate its amputation at or near the wrist joint.

A sister of Claude Henderson and a girl companion testified that they passed the state garage earlier in the afternoon and saw a man who appeared to be an employee there using a shovel to throw some refuse out in front at or near the point where the boys were said to have found the dynamite caps. They did not know the name of the man, but had seen him there on previous occasions. Others, including members of the Henderson family, testified that, after learning of the accident and the attending circumstances, they went to the scene and upon searching in the mass of refuse found a dynamite cap.

The evidence shows that employees of the highway commission used dynamite and dynamite caps in roadwork, but there is no evidence that such explosives were stored or kept in the state garage. On the other hand, employees of the highway commission testified that they had been instructed by those superior in authority not to permit explosives to be kept or stored there, and that such instructions had been followed.

Some of the witnesses for appellee testified that it was a custom for children to play upon the grounds adjacent to the garage buildings, but there is a conflict in evidence on that question.

Counsel for appellant argue that in the proven circumstances the attractive nuisance doctrine does not apply, and counsel for appellee do not insist upon the application of that doctrine, but state in their brief that the case was not presented or practiced on that doctrine, but rather on the theory that the duty imposed upon the highway commission to use ordinary care to so keep, handle, and control its dynamite caps as not to inflict injury upon others. But there is a marked difference of opinion with respect to the status of the Henderson boy in relation to the highway commission, and as to the duty the latter owed to him. Appellant maintains that he was a trespasser, while appellee insists he was a licensee.

The basis for appellee's contention that young Henderson was a licensee is the evidence that children were accustomed to play upon appellant's premises. But that evidence could only be effective as tending to

establish a license to children to play. There is no evidence that these boys or any other person or persons ever before gathered junk upon the property in question or that the highway commission or its agents or servants expressly or impliedly invited such act by permission, consent, acquiescence, or otherwise.

Even as a licensee to play upon the grounds, the injured boy could exercise only such rights and privileges as were granted by the license, and, when he exceeded those privilges and proceeded upon the premises to search for and appropriate to himself articles belonging to the owner of the property, he became a trespasser. Lee's Adm'r v. Hines, 202 Ky. 240, 259 S. W. 338; Midland Valley R. Co. v. Kellogg, 106 Okl. 237, 233 P. 716; Brown v. American Mfg. Co., 209 App. Div. 621, 205 N. Y. S. 331; Bonniwell v. Milwaukee Light, etc., Co., 174 Wis. 1, 182 N. W. 468; 45 C. J. 742; Ciarmataro v. Adams, 275 Mass., 521, 176 N. E. 610, 75 A. L. R. 1171. And as such he took the premises as he found them without any duty upon the part of appellant to anticipate his presence or to exercise any degree of care toward him save to refrain from inflicting upon him willful or wanton injury. Sage's Adm'r v. Creech Coal Company, 194 Ky. 415, 240 S. W. 42; Columbus Mining Co. v. Napier's Adm'r, 239 Ky. 642, 40 S. W. (2d) 285. And, apart from the attractive nuisance doctrine, infants are placed upon the same footing as adults.

In support of their general proposition that it is the duty of persons, storing, keeping or handling explosives to use ordinary care not to cause injury to others, counsel for appellee cite 11 R. C. L. 662, 663, secs. 14 and 16, and other authorities. But a reading of the cited sections of R. C. L. in connection with 17 of the same article will reveal that liability is made to depend upon the relation of the parties, and that, except as to infants of such tender years as to raise the natural presumption that they will follow childish instincts and impulses, and not know or appreciate the probable consequences of their acts, and cases involving intentional or wanton injury, trespassers are excluded from the rule invoked. And there is nothing in the other authorities cited warranting a different conclusion. A full discussion of texts in R. C. L. cited by counsel will be found in Stephens v. Stephens, 172 Ky. 780, 189 S. W. 1143, and that case stands in direct vari-

ance with every contention made by appellee here. The presumption favoring trespassing infants is inapplicable to a child 15 years of age unless it be shown that he is of such subnormal mentality as to be classed with those for whom the protecting rule was created. Columbus Mining Co. v. Napier's Adm'r, supra; Stephens v. Stephens, supra, and cases therein cited.

In the light of the evidence and an overwhelming weight of authority favoring the contention of appellant, there is no escape from the conclusion that it was error to overrule the commonwealth's motion for a directed verdict.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.

Whole court sitting except Willis and Dietzman, C. J., who were absent.