# Codell Construction Company v. Campbell's Guardian et al.

(Decided March 3, 1933.)

O. H. POLLARD for appellant.

WILLIAMS & ALLEN for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

The Codell Construction Company, hereinafter called the defendant, has appealed from a $5,000 judgment recovered against it by Algin Campbell, whom we shall refer to as the plaintiff.

On May 31, 1929, the plaintiff was injured by the explosion of a dynamite cap or exploder (there is a question just which it was, but we see no reason to pass on that, and we express no opinion as to which it was or whether there is any difference between the two) when he struck it with an ax. Plaintiff's right

eye was blown out, his face wounded in several places, both his legs were injured, the right one quite seriously, and he sustained other injuries, for which he asked $5,000 general damages, $500 for surgical and hospital expenses, and $100 for lost time, or a total of $5,600.

The defendant was a contractor and was engaged in the construction of a highway that leads from Jackson to Hazard. In this work defendant used dynamite wherever rock was encountered, and near the home of the plaintiff's parents there was rock, and they used it there. Plaintiff says he found this cap about 100 yards from his home, in a piece of drain tile about 3 feet long and 18 inches in diameter that was standing on end beside the highway. His purpose in striking it with the ax was to get the metallic part of it to use as a sinker on a fishing line.

Plaintiff was born December 28, 1914, was at the time of the accident 14 years, 5 months, 3 days old, he seeks to recover of the defendant under the attractive nuisance doctrine, and alleges that, by reason of his age and inexperience and immature condition of his mind, he did not know of the dangerous and explosive nature of said dynamite caps or that any injury would result to him by reason of the way and manner in which he handled said dynamite caps at the time he was injured.

Thus he presents a question which we reviewed and discussed in L. & N. R. Co. v. Hutton, 220 Ky. 277, 295 S. W. 175, 53 A. L. R. 1328, in which opinion it was held that, in the case of an infant 14 years of age, he could not invoke that doctrine, in the absence of evidence that he did not possess sufficient intelligence to be responsible for his act.

His pleading probably was insufficient to permit him to introduce evidence that he was mentally inferior to the average boy of his age, but the court admitted evidence on that question, and here is what is said by the two witnesses who testified on the subject (this is from the mother's evidence):

"Q. What was the condition of the plaintiff's mind at the time he was injured; that is to say, was he average normal child as to mentality or not? A. No, sir, he was not."

A man to whom the boy had gone to school four or five years before this accident was asked and answered this question:

"Q. How did he compare in intelligence to ordinary boys; state whether or not he had ordinary intelligence, or whether he was an extra bright boy? A. He was a pretty bright boy."

The mother's evidence is of no probative value; the average reasonable man on reading it would at once ask: "What does she mean? Does she mean to say, the plaintiff was above normal or below normal?" That is all she said. The evidence of the schoolmaster is direct. It shows plaintiff was above the average. The plaintiff was in the seventh grade at the time of his injuries; his testimony on this trial occupies 18 pages of the record before us. It is clearer, better, and more tersely stated than that of the average witness of mature years. There was absolutely no evidence to show this boy was mentally inferior to the average 14 year old boy; hence he cannot invoke the attractive nuisance doctrine. See L. & N. R. Co. v. Hutton, 220 Ky. 277, 295 S. W. 175, 53 A. L. R. 1328. Com. v. Henderson's Gdn., 245 Ky. 328, 53 S. W. (2d) 694, and cases from other states collected in 36 A. L. R. page 141 et seq.

The defendant was engaged in the grade work involved in the construction of this highway, and Nick Domino, a subcontractor, was doing the drainage work; both used dynamite and dynamite caps and exploders. To which one of these contractors this particular cap belonged is a matter of conjecture. It was found, so plaintiff says, in a drain tile. Domino was putting in these drain tiles so that it might be more inferable that this belonged to Domino than to the defendant.

Plaintiff had worked for Domino, he lived in the immediate neighborhood where this blasting was being done, and he could not be entirely ignorant of the agencies employed. The defendant operates a commissary, and a few minutes before the accident plaintiff's stepfather had sent him there to get some groceries and some dynamite caps; he got the groceries, but the man in charge of the commissary would not let him have the dynamite caps. He says he found this one. He knew it was not his, yet he took it and was injured

by it. He does not say he knew it was wrong to take it, but his conduct shows he did, for, although his stepfather had sent him for some caps, when he came back, he told him they did not have any caps at the commissary. When he found this cap shortly thereafter, he did not take it to his stepfather, but tried to convert it into a sinker for a fishing line with the disastrous result we have seen. Everyone must regret the unfortunate fate that has overtaken this young man, but that regret furnishes no grounds for awarding plaintiff damages in this case.

The court erred in overruling the defendant's motion for a directed verdict in its favor, and for that error this judgment is reversed.