## Fourseam Coal Corporation v. Hatfield et al.
## Same v. Hatfield.
June 13, 1939.

S. M. Ward, Judge.

Jesse Morgan for appellant.

Roy Helm for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

On March 30, 1937, Melvin Ray Hatfield was seriously injured by the explosion of a dynamite cap with which he was playing. The accident happened twenty days after his twelfth birthday. These two actions were brought against the Fourseam Coal Corporation to recover damages; one by the injured boy's parents for loss of services of their son, and one by his father as his next friend for his permanent injuries and pain and suffering. The actions were based on the theory that the defendant, its servants and agents, negligently permitted a dynamite cap to be placed on a refuse or jack rock pile on defendant's premises, a place where the Hatfield boy and other children were accustomed to be and to play with the knowledge and acquiescence of the company. The cases were tried together, and the jury returned a verdict for $900 for the plaintiffs in the action by the parents and $3,000 for the plaintiff in the action of Melvin Ray Hatfield by his next friend. The defendant has appealed, and first insists that the petitions, which are identical in their allegations of negligence, were insufficient because there was no allegation in either petition that the negligence charged therein was the proximate cause of the accident and there was no allegation that Sections 2739-31 and 2739-41 of the Kentucky Statutes had been violated by the defendant. These sections regulate the storage and distribution of explosives at mines in this state.

The petition in the case of Homer Hatfield and Mary Hatfield against the Fourseam Coal Corporation contained these allegations:

"The plaintiffs say that the defendant, through its servants, agents and employees in conducting its said mining business carelessly and negligently and with gross carelessness and negligence caused, permitted and allowed a dynamite cap to be placed in and left in a jack rock dump on the premises of the aforesaid defendant in a public place on Buffalo Creek in Perry County, Kentucky near the home of Lester Thompson on or about March 29, 1937, and at a place easily accessible to and where the afore-

said Melvin Ray (Jack) Hatfield and other children of tender years, with the knowledge and acquiescence of the said defendant, were habitually accustomed to be and to play; all of which things were or could by the exercise of ordinary care have been known by the defendant, but nevertheless it left said dynamite cap exposed and failed to guard said jack rock dump so as to exclude children therefrom; say that said dynamite cap was a thing attractive and alluring to said Melvin Ray (Jack) Hatfield who was at that time 12 years of age; say that said dynamite cap was for a child of tender years an extremely dangerous instrumentality; say that the said Melvin Ray (Jack) Hatfield by reason of his age, inexperience and immaturity and without knowing or realizing its dangerous and explosive nature or that injury would result to him by reason of the manner in which he handled it, took possession of said dynamite cap at said jack rock dump on or about March 29, 1937; say that on the following day, to-wit, on or about March 30, 1937, at said place said dynamite cap while the said Melvin Ray (Jack) Hatfield was playing with and handling it exploded thereby lacerating and mangling his right hand and thereby necessitating the amputation of his right hand except the ring and little fingers and thereby rendering his ring finger of his right hand stiff and useless and thereby rendering his right hand useless for occupational purposes. * * * Plaintiffs say that the carelessness and negligence of the defendant as aforesaid were the proximate cause of their said son's injuries as aforesaid.''

Undoubtedly, the petition stated a cause of action. It was appellees' theory and their proof tended to show that unexploded dynamite caps were carelessly and negligently left on the floors of entries and rooms in the mine, and were permitted to be mingled with the refuse and jack rock which later was shoveled into cars, carried out of the mine, and dumped at various places on the defendant's property, including the place where it is claimed the Hatfield boy found the dynamite cap which later exploded and injured him. Section 2739-31 of the Statutes relates to the location and type of construction of magazines used for storing explosives, and Section 2739-41 relates to the receptacles in which such explosives are carried into the mine and to their distri-

bution to the miners. The negligence of which the plaintiffs complained occurred after the storage and distribution of the explosives, and these statutes therefore had no application.

Appellant's chief complaint seems to be that the evidence was insufficient to authorize the submission of the case to the jury, and the trial court erred in overruling its motion for a directed verdict in its favor.

Melvin Ray Hatfield testified that he went to the jack rock pile near the home of Lester Thompson about 9 o'clock in the morning. He and the other children in the neighborhood had been accustomed to play there and also to pick coal out of the pile of refuse. He had taken along a small wagon, at his mother's suggestion, to load it with coal. About 11 o'clock a truck operated by one of appellant's employees and loaded with refuse from the mine was dumped at the jack rock pile. While picking coal out of the refuse he found a bright, shiny object which he put in his pocket. He described the transaction as follows:

"One morning my mother sent me to get some coal and I was digging in the coal pile, in the jack rock pile and I found a little bright thing. I stuck it in my pocket and the next day I got my hand blowed off. * * * I was digging in the jack rock and all at once I seen a little bright thing and I stuck it in my pocket. I played around there and the next day a gang of us boys playing around there and when I started home for dinner I was trying to get the coal dust out of it, getting the coal dust out of it with a match, and it just went off and blowed off my fingers."

A number of miners testified that on various occasions before the accident they had seen unexploded dynamite caps in the refuse on the floor of the mine, and there was proof that this was reported to the mine superintendent and to one or more of the mine foremen. William Cornett, a coal loader, testified that at different times shortly before the accident he saw unexploded dynamite caps scattered on the floor of the mine, and that his child found a dynamite cap in a jack rock pile. He notified the mine superintendent, one of the foremen, and the president of the company. He related this conversation with the mine foreman:

"Well, Mr. King, he is the one you have to take up

the grievances with, and I told Mr. King that 'they are being so careless with the powder, that my boy had found one and other kids around there had found them, dynamite caps, and there are some kids going to get killed if they are not handled carefully in the mine,' and he said he would take care of it and I went on.''

After relating a conversation with the president of the company, he testified as follows:

''He said he would stop it then and said he would guarantee that it wouldn't be done any more and it went on and they kept on doing that and up in the shop one morning started to work and the mine foreman was there, Mr. Fitzgerald and I asked him about it, if he wouldn't do something about being so careless with this powder, having it hauled out here and dumped in the jack rock piles where the kids get the coal and I said, 'I am going to report it to the mine inspector.' He said 'You will just make it hard on the men.' And I said 'I can't help it, that would be better than getting somebody killed,' is what I told him, in the presence of I don't know how many men in the shop that morning.''

Willie Davis, who worked at the tipple and whose 10 year old son also found a dynamite cap in refuse outside the mine, testified that he had seen unexploded caps in jack rock and refuse passing through the tipple. He was a member of the grievance committee of the local union, and was present a month or two before the accident when the committee complained to the mine superintendent of the careless manner in which explosives were being handled.

Under an agreement with appellant, miners and their families were permitted to pick coal out of the jack rock piles to burn in their homes. This work was usually done by children, and this fact and the fact that children in the camp played at the jack rock piles, including the one where young Hatfield found the dynamite cap, was known to appellant's officers and agents. As said in Sutton Construction Company v. LeMaster's Adm'r, 223 Ky. 296, 3 S. W. (2d) 613, 614:

''The law is well settled in this state that one using or storing explosives must use such care as is commensurate with the nature of the substance and the dangers incident to the handling or use thereof, and

where the place of storage or use is readily accessible to children of tender years, such care as might reasonably be expected of a person of ordinary prudence under the circumstances must be exercised not to expose them to injury.''

See, also, Jones Savage Lumber Company v. Thompson, 233 Ky. 198, 25 S. W. (2d) 373; Sparks v. Maeschal, 217 Ky. 235, 289 S. W. 308; annotation in 100 A. L. R. 451.

This rule is applicable to the facts of the instant case. It was the duty of appellant not only to comply with the statutory requirements as to storage of explosives and their distribution in the mine, but also to see that unused explosives were not carelessly mingled with refuse in the mine and carried out and dumped at places where they were accessible to children of tender years. Appellant's duty did not end with the distribution of the dynamite caps in the mine.

"The owner of a commodity so inherently dangerous as dynamite or nitroglycerin is required to exert the highest degree of care to keep it in close custody to prevent its doing mischief, and that duty never ceases; and such owner is liable for all the natural and probable consequences which flow from any breach of that duty." 22 R. C. L. 165.

There was conflict in the evidence on this point, but there was competent evidence amply sufficient to take the case to the jury and sustain its verdict.

Appellant cites and relies upon Codell Construction Company v. Campbell's Guardian, 248 Ky. 1, 57 S. W. (2d) 1010, and Commonwealth v. Henderson's Guardian, 245 Ky. 328, 53 S. W. (2d) 694, in support of its contention that it was entitled to a directed verdict. In Codell Construction Company v. Campbell's Guardian, the injured child was more than 14 years of age. Recovery was sought under the attractive nuisance doctrine, and it was held that the plaintiff could not invoke that doctrine in the absence of evidence that the injured person did not possess sufficient intelligence to be responsible for his acts. In Commonwealth v. Henderson's Guardian, the injured boy was more than 14 years of age and a trespasser. Here the injured child was only 12 years of age and was not a trespasser, but was on appellant's premises at a place where he had a right to be and where appellant and its agents knew that he

and other children of tender years were accustomed to go to obtain coal and to play. Bearing in mind that dynamite caps are inherently dangerous, we are unable to conclude that there was no actionable negligence. We think the chain of circumstances was such that the result could reasonably have been foreseen.

Complaint is made of instruction No. 1 in each case on the ground that there was no evidence to authorize it. This is on the theory that all the testimony concerning the careless manner in which dynamite caps were handled after they had been distributed in the mine and evidence that exploded caps were left in refuse which was later carried in cars to the tipple, dumped in trucks, and transported to various places on appellant's premises, was incompetent. As heretofore pointed out, this evidence was competent under the pleadings.

We find no error prejudicial to appellant's substantial rights, and the judgment in each case is affirmed.