**662**

## MEARA v. UNITED STATES.
### Civ. A. No. 2570.

United States District Court
W. D. Kentucky, at Louisville.
March 18, 1954.

Charles B. Tachau, W. G. Hume, Brown, Eldred, Brown & Tachau, Louisville, Ky., for plaintiff.

Charles F. Wood, Asst. U. S. Atty., Louisville, Ky., J. Leonard Walker, U. S. Atty., Louisville, Ky., for defendant.

SHELBOURNE, Chief Judge.

This action was instituted February 13, 1953, by plaintiff John William Meara, an infant about four years of age, suing by his father and next friend William D. Meara, against the United States, under the Tort Claims Act, codified in Title 28, United States Code, Section 1346(b) and Section 1402(b).

Plaintiff seeks a recovery of damages in the sum of $35,000, for injuries sustained by him November 16, 1952, when an explosive, described in the evidence as a "mine detonator" fuse M1A2 exploded when the plaintiff was playing with the explosive in the back yard of an apartment house where he lived with his parents on the Fort Knox Reservation at Fort Knox, Kentucky.

The case was tried to the Court, as required by the Federal Tort Claims Act, on September 11, 1953.

From the admissions made in response to plaintiff's request for admissions, the depositions and proof heard at the trial, the Court makes the following Findings of Fact and Conclusions of Law—

### Findings of Fact

1. John William Meara, the infant son of William D. Meara, and wife, resided with his parents in Apartment "F", Building No. 7746 on Fort Knox Military Reservation, Fort Knox, Kentucky, in an apartment belonging to the United States, which had been assigned as living quarters to William D. Meara and his Family, said William D. Meara, being then a Major in the United States Army and assigned for duty at Fort Knox, Kentucky.

The residence of the plaintiff was constructed at its site upon authority granted by the Department of Army, Washington, D. C., to a Planning Board at Fort Knox, Kentucky. At approximately 200 feet to the rear of the building occupied by plaintiff, there had been prior

to 1942 an ammunition dump. In 1942, ammunition, with the exception of small arms ammunition, i. e., ammunition of a 22, 38, 45 and 50 caliber, had been removed from this ammunition dump to a point approximately five miles from the residence of the plaintiff.

2. On Sunday morning November 16, 1952, at about eight o'clock A.M., John William Meara had found on the Military Reservation at the rear of the apartment building in which he lived, a mine detonator fuse Model M1A1 or M1A2, which was dangerous to life and limb and because of being subject to violent explosion under slight force and dangerous to any person ignorant of its character and purposes.

3. The detonator fuse was found by plaintiff within 150 feet of the back door of his father's apartment, lying upon the ground owned by the United States and maintained by it for use in connection with the building and apartments where plaintiff's family resided.

There was no rule or regulation which prevented children of the occupants of the apartment where plaintiff lived playing on the grounds where said detonator fuse was found.

4. The detonator fuse exploded while being handled by plaintiff near to the back door of Apartment H occupied by Major Henne, which was separated from the Meara apartment by only one intervening apartment.

5. The detonator fuse had previously been found by the plaintiff's brother William D. Meara, Jr., about nine years of age, a day or two prior to the accident to the plaintiff and had been left by William D. Meara, Jr., in or near the dog house in the back yard of the Meara Apartment, in an area that had previously been used as a "burning point" for small ammunition and explosives. There was on the area, designated as the "burning point", a large metal container, which had been used as an incinerator and near the incinerator, there were cartridges scattered about, with indications of having been burned, though the

particular area had not been used as a "burning point" subsequent to 1946.

The metal container was a kettle-type device and was referred to in the evidence sometimes as a "kettle" and was on occasions used for the burning of trash and was outside of the old inclosed ammunition area.

There was no direct testimony before the Court that any mine detonator fuse of the type that injured the plaintiff had ever been burned in the metal container or kettle back of the plaintiff's residence.

6. The Apartment Building known as No. 7746, in which the Meara family lived, was constructed by the United States and occupants of the apartment had requested the Military Authorities to clear up the debris from the area where the detonator fuse was found, but no heed had apparently been given to the request, at least no cleaning up is shown to have been done subsequent to 1950. It was known, or was apparent, that children, members of the families occupying the apartment buildings, daily played in and about the premises where the burning had taken place.

No proof was submitted to the Court to show that the type of mine detonator fuse which injured the plaintiff had ever been stored at the old abandoned ammunition dump at the rear of plaintiff's home at Fort Knox.

Major Eric Kobbe, President of the Board of Officers who made an investigation of the accident involved in this suit, testified that immediately after the accident, an object, which was a part of exactly the same type of fuse, was found at this site, together with various other objects, such as part of a dummy hand-grenade and a blasting cap.

Admittedly, the injuries sustained by the plaintiff were painful and caused permanent impairment. Plaintiff's index middle finger of his right hand were mangled and the tissue between the thumb and index finger was destroyed, and Colonel Robert W. Boal, the Surgeon at Fort Knox, testified that the plaintiff's injuries would result in from 70 to 80

percent loss of the use of his hand and from 50 to 60 percent loss of the use of his body as a whole.

Dr. Kenneth Leatherman, prominent Surgeon of Louisville, examined the plaintiff February 28, 1953, and expressed the opinion that the right hand was impaired to the extent of 75 percent of its use and that the plaintiff was impaired as a whole by his injuries to the extent of 10 percent.

Skin grafting was necessary in the treatment of plaintiff's injuries.

## Conclusions of Law

I. The Court has jurisdiction of the subject matter and of the parties. Title 28, United States Code, Sections 1346(b) and 1402(b).

II. The case is controlled by the law of Kentucky, under the provisions of the Federal Tort Claims Act, Section 1346(b), Title 28, United States Code, authorizing recovery under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

In the case of Jones Savage Lumber Co. v. Thompson, 233 Ky. 198, 25 S.W. 2d 373, 376, it is said:

> "If one keeps upon his premises that which, in its very nature, is calculated to attract the attention and excite the curiosity of children to such an extent as to draw them to the object of their curiosity and bring them in peril, if the thing be dangerous, it is generally termed an attractive nuisance. No owner or occupant of property can escape liability for an injury caused to a child by reason of an attractive nuisance allowed on his property, unless he can show that he exercised ordinary care under the facts and circumstances to render the thing constituting the nuisance harmless to children, or to prevent their going to, or playing around, the object."

The Court, in that case, laid down the rule that if explosives or dynamite caps were negligently left where they were accessible to children, and carried away and thereafter exploded, the negligence in the creation of the nuisance was the motivating cause of the injury; that where dynamite caps were placed where children were accustomed to congregate, if known, or by reasonable observation on the part of the owner, it could have been known that the dangerous instrumentality was there, liability existed.

In the subsequent case of Fourseam Coal Corp. v. Hatfield, 279 Ky. 132, 130 S.W.2d 73, 75, the plaintiff had passed his twelfth birthday and had found a "bright, shiny object", which proved to be a dynamite cap from a jack rock dump, where children were accustomed to play and where coal miners' families were permitted to pick coal for fuel. While playing, with the dynamite cap, it exploded and seriously injured the child. The Court said:

> " 'The owner of a commodity so inherently dangerous as dynamite or nitroglycerin *is required to exert the highest degree* of care to keep it in close custody to prevent its doing mischief, and that duty never ceases; and such owner is liable for all the natural and probable consequences which flow from any breach of that duty.' " (Emphasis added.)

It was there held that it was not only encumbent upon the mine to comply with certain statutory requirements regulating the storage of explosives, but also to see that unused explosives were not carelessly mingled with refuse in the mine and carried out and dumped at places where they were accessible to children of tender years.

In the most recent case—Bates v. Caudill, Ky., 255 S.W.2d 487—it was held that there was no liability against owners of coal mines, who had stored dynamite in a building the doors of which they had securely locked and where access was gained to the dynamite by prizing open a window which had

been boarded up and the owners had no knowledge that children had gained access to the dynamite.

The Court concludes that the representatives of the Government, in failing to clean up the area where they had attempted to burn ammunition and explosives, were negligent and that the negligence was the proximate cause of the injury to the plaintiff John William Meara, in view of the fact that the evidence in this case shows that children, members of the families of soldiers quartered on the Reservation, were permitted to play over the area where the danger existed.

It is concluded the $10,000 is an amount which will be reasonably adequate to compensate the plaintiff on account of the impairment in his earning power; and that $3,000 is an amount which will be reasonably adequate to compensate plaintiff on account of the pain and suffering he has endured, or which he may endure in the future, a total recovery of $13,000.

Judgment for that amount may be submitted by counsel for the plaintiff, on notice to counsel for defendant.