CASE 73.—ACTION BY THE ADMINISTRATOR OF I. O. LEWIS DECEASED AGAINST THE BOWLING GREEN GAS LIGHT CO. FOR THE WRONGFUL DEATH OF SAID DECEDENT.—March 17, 1909.

## Lewis' Adm'r v. Bowling Green Gas Light Co.

| 135 | 611 |
| 137 | 361 |
| f138 | 632 |

Appeal from Warren Circuit Court.

JOHN M. GALLOWAY, Circuit Judge.

Judgment for defendant, plaintiff appeals.—Reversed.

1.  Evidence—Res Gestae.—In an action for death of decedent through contact with an electric wire which had fallen from the poles, what decedent said on taking hold of the wire as to his purpose in grasping it was admissible as part of the res gestae.
2.  Electricity—Injuries Incident to Production—Companies and Persons Liable.—A company supplying electricity cannot escape liability for negligence in the manner of distribution by turning it onto private wires, or on the wires of another concern, which are not safely arranged to receive and transmit the current.
3.  Electricity—Injuries Incident to Production—Care Required.—A company distributing electricity through public streets is held to the highest degree of care to keep its lines in a safe condition.

4.  Electricity—Injuries from Broken Wires—Failure to Inspect —Negligence—Questions for Jury.—In an action for death of decedent, through contact with a sagging and defectively insulated electric wire, whether defendant, who used the wire for transmitting electricity, and who knew that the line had not been inspected or repaired for two years, and that the insulation was much worn off, was negligent in failing to inspect and discover the break for more than 12 hours in the daytime, was for the jury.

5.  Negligence—Contributory Negligence—Questions of Law and Fact.—While ordinarily, when there is no conflict in the evidence, it is a question of law whether the admitted facts constitute contributory negligence, yet, if it be a question whether plaintiff's act at the time was that of an ordinarily prudent person under the same circumstances, the question is for the jury.

6.  Electricity—Injuries from Broken Wires—Contributory Negligence—Question for Jury.—In an action for death of decedent through grasping a broken electric wire which had fallen from the poles, whether decedent was guilty of contributory negligence, held, under the evidence, a jury question.

WRIGHT & McELROY and JOHN B. GRIDER for appellant.

POINTS AND AUTHORITIES.

1.  Where defendant placed a deadly current of electricity upon an unsafe line, it is responsible for injuries occurring by reason of the defective condition of the line, whether defendant owned the line or not. Thomas' Adm'r v. Maysville Gas. Co., 21 Ky. Law Rep. 1609.

2.  Where defendant uses the dangerous agency of electricity for its private gain and transmits it by means of wires, it is bound at its peril to use the highest degree of care to protect the public and to keep its wires perfectly insulated at places where the public have the right to be for business or pleasure, and shall use the highest degree of care by constant inspection to see that the lines are kept safe. McLaughlin v. Louisville Electric Co., 18 Ky. Law Rep., 639; Overall v. Louisville Electric Co., 20 Ky. Law Rep., 759; Mangans' Adm'r v. Louisville Electric Co., 9 S. W., 703; City Owensboro v. Knox, 76 S. W., 191; Sweitzer's Adm'r v. Citizen's Gen. Electric Co., 21 Ky. Law Rep., 608.

3.  Defendant was guilty of gross negligence, not only by failing to inspect line and see that it was safe, but by failing to test it, from 5 o'clock Sunday morning until 6 o'clock that evening. Brown v. Consolidated Light, Power & Ice Co., 109 S. W., 1032.

4. The test of contributory negligence is not always found in the failure to exercise the best judgment or to use the wisest precaution, * * * * but it is to consider whether a prudent person in the same situation and having the knowledge possessed by the one in question, would have done the alleged negligent act. Thompson's Commentaries on Law of Negligence, Vol. 1, Sections 171-173.

5. In order that an act shall be deemed one of contributory negligence per se, it must have been done contrary to a statutory duty, or it must appear so opposed to the dictates of common prudence that the Court can say without hesitation or doubt that no careful person would have committed it.  L. & N. R. Co. v. Walton, 13 Ky. Lew Rep., 460; Ashland Coal & Iron Co. v. Wallace, 19 Ky., Law Rep., 853.

6. The lower court erred in taking the case from the jury, and should have permitted the jury to say, under all the circumstances whether I . O. Lewis was guilty of such contributory negligence as would prevent a recovery.

SIMS, DUBOSE & RHODES for appellee.

### AUTHORITIES.

1. The Appellee was not required to exercise the highest degree of care at the time and under the circumstances where and when the accident occurred.  McLaughlin v. Light Company, 18 Ky. Law Rep., 693.

2. It was contributory negligence for the Appellant's testator to take hold of a live wire in the manner and under the circumstances shown in this case.  Mayfield Water & Light Co. v. Webb's Administrator, 111 S. W., 202; I. C. R. R. Co. v. Wilson, 23d Ky. Law Reporter, p. 684.


OPINION OF THE COURT BY JUDGE O'REAR—Reversing.

The Bowling Green Gaslight Company furnished the electric power for a private electric light line extending beyond the city limits of Bowling Green, to supply some suburban residents with lights for their dwellings.  One of the wires got down and parted in two places.  It hung from the poles and partly on a fence or tree, so that it was sagging some six or eight

feet above the ground and alongside of the highway in front of I. O. Lewis' residence. The insulation was worn off the wire in many places. It had not been inspected by the gaslight company since it had been put up—for about two years. The voltage used on this wire was about 1,200 or 1,300 watts. One kilowatt is ordinarily fatal to life where a human body forms part of the circuit. Mr. Lewis was about 70 years old, hale, and in possession of his mental faculties. Walking along the public highway in front of his premises, and seeing this loose wire sagging to within a short distance from the ground, he stepped over and took hold of it, probably to pull it down so as it would be out of the way, when he was shocked and killed by the current of electricity in it. What his purpose was in taking hold of the wire we do not know, because the trial judge would not allow the wit-- ness to state what Lewis said as he took hold of the wire. What he then said was as clearly competent as what he did, and was, in fact, part of his act. The accompanying statement of an act is a verbal act, and, as it illustrates the physical act, is treated as part of the res gestæ.

This suit was by the personal representatives of Lewis to recover for his death, on the ground that the gas company was negligent in not looking after the insulation and safety of the wire, and in turning into it such a dangerous voltage of electricity without knowing that the wire was in safe condition along the highway where people might be expected to come in contact with it. The trial court gave the jury a peremptory instruction to find for the defendant at the close of the evidence in the case. The correctness of that ruling is the question presented here for review.

It may be assumed that the trial judge did not base
his ruling upon the fact that the gas company did not
own the line, as it has been authoritatively declared
that the distributor of such a deadly agency as elec-
tricity cannot escape liability for negligence in the
manner of distribution by turning it onto private
wires, or on the wires of another concern, which are
not safely arranged to receive and transmit the cur-
rent. Thomas' Admr. v. Maysville Gas Co., 108 Ky.
224, 56 S. W. 153, 53 L. R. A. 147.

The evidence was that the wire in question was
broken at one or two places, and was hanging down
as stated, and that on the night previous to the
death of Mr. Lewis a witness saw sparks and flames
emitted from the wire at a point where on the next
morning it was discovered to be in two. The wire
was without insulation in many places; it had rotted
or broken off, and had not been repaired. That condi-
tion had existed for some months. The wires (two
of them constituting a circuit) were strung on oppo-
site sides of the posts along the highway, attached
to the posts by glass brackets, and were thus placed
8 to 12 inches apart. They were so close as that,
when they or one of them became loose, they were
in danger of swinging together and touching, creating
a short circuit. This would melt the wires, letting
them fall to the ground. Appellee had not inspect-
ed this line for defects since it was built some two
years before, and had not caused it to be repaired.
Under these facts we think the case was one for the
jury, both as to the company's negligence, and the
decedent's contributory negligence. The company
could not escape its responsibility as the dispenser
through the public streets and roads of such a
stealthy, deadly force as an electric current of such

high voltage upon insecure lines of wire, where the public might reasonably be expected. No more could it dispense with the duty of inspecting the wires, from time to time to see that they were securely fastened and properly insulated, although the lines were not owned by it. When it used the lines, it was its duty to see to their proper and safe condition. This duty was not discharged by the exercise of ordinary care, but required the highest degree of care to keep them safe. If the wire broke because of the storm of Sunday morning (the injury occurred late Sunday afternoon), and if appellee did not know it was broken, and could not in the exercise of that degree of care exacted of it by the law have discovered it, then it would not be negligent in failing to discover it; but, having knowledge of the manner in which the wires were strung, the length of time they had been exposed and in use, and that the insulation was off much of the wire, whether then it was negligent in failing to inspect and discover the break, from whatever cause it may have occurred, for more than 12 hours in the daytime, is a question for the jury.

As to the plea of contributory negligence: Ordinarily, when the facts are admitted, and where there is no conflict in the evidence, it is a question of law whether they constitute contributory negligence; but it is not always so. Although the facts may be admitted, still if it be a question whether the act of the plaintiff at the time was such as an ordinarily prudent person would have done under the same circumstances, the jury ought to be permitted to say whether, under the circumstances, it was or was not negligence, but for which the defendant's negligence would have been harmless. If the act relied on is admitted and is clearly negligent, or is clearly not

negligent, the court as a matter of law should by instructions to the jury dispose of the matter; but, although the proof is all one way as to the act, the act itself may be of such doubtful character as to render it an issue of fact, as much so as if the act itself were not of a doubtful character, but the evidence tending to establish or to disprove it was. If the decedent knew that was a live wire, and knew the danger of touching it as he did, the act would be undoubtedly negligence on his part which would defeat a recovery for his injury. If he did not know, and had not reason to believe, it was a live wire, but, on the contrary, had reason to believe the electric current was not turned onto it, his was not such an act as an ordinarily prudent person might have done under the same circumstances. At least, it was not necessarily so. His purpose might have been to place the wire so that when the current was turned on it would be out of the way to do damage.

It is claimed that the insulation is not a protection to human life when the voltage is so high as was that in use in this instance, but there was evidence to the contrary of that contention. We think the whole matter should have gone to the jury under the usual instructions in such cases as to the care exacted of the gas company and of the decedent, and as to what would constitute negligence in each.

Judgment reversed and remanded for a new trial.