## Columbus Mining Company v. Napier's Administrator.

(Decided June 16, 1931.)

CRAFT & STANFILL for appellant.

NAPIER & EBLEN for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

On July 13, 1929, Otis Napier was found dead in a driftmouth about 60 feet from the opening on the premises of the Columbus Mining Company. Thereafter this action was brought by his administrator to recover damages for his death. Liability was predicated on the theory that the driftmouth was dangerous because of the presence of noxious gases; that it was attractive and alluring to children, who were accustomed to play there with the knowledge of the mining company; that the decedent, though fifteen years of age, did not have mind enough to appreciate the danger; that he was playing in the driftmouth at the time of his death; and that his

death was caused by noxious gases. Issue was joined, and the jury returned a verdict in favor of plaintiff for $10,000. The mining company appeals.

The facts are these: Though located on appellant's premises, the driftmouth is near the city limits of Hazard, and about 3,000 feet from where appellant conducts its active mining operations. The driftmouth is about 6 feet wide and 4 or 4½ feet high. It is located about 30 yards above a road and small branch. Bushes have grown up around it, and the surrounding ground is very steep. The driftmouth was open, and there was no warning sign about it. Besides detailing the facts connected with the finding of decedent's body, William Napier, his father, testified that decedent and other children were in the habit of congregating and playing in the driftmouth; that he admonished decedent to stay away from the mine because it was dangerous; that decedent was fifteen years of age, and a big healthy, robust child; that he had been in school ever since he was six years old, and had attended regularly; that he was in the fifth grade and played with boys from eight to twelve years of age; that he would also play with toy wagons, build little dams, and shoot at little boys with bows and arrows; that he told Sam Allais, superintendent of the Columbus Mining Company, that children were playing in and about the driftmouth; that Allais said he would not allow anybody to get coal up there and he was coming to check up on the coal; that this conversation happened about three or four months before decedent died; that after that the mining company did not do anything toward stopping up the driftmouth. M. C. Napier, county superintendent of schools, testified that, if a child entered school at the age of six, and attended regularly, and was a normal child, it was supposed to make a grade a year, and would be eleven years old by the time it entered the fifth grade. John E Napier, the grandfather of the decedent, testified that he had seen decedent and other children playing in the driftmouth for three or four months before decedent's death. Decedent played with Mr. Young's boys, one of whom was ten, and the other eight. He further stated that about three or four months before decedent died he told Mr. Ed. Allais the manager of the Columbus Mining Company, that children were going in that mine; that it was dangerous and that he had better close it up. He also stated that decedent was in the habit of playing

with younger boys. Frank Young, a boy eleven years of age, who was in grade Third-A, testified that, during the summer before Otis Napier died, he played hide and seek with Otis in the mine because it was dark and cool, and you could hide in there better. His father quarreled with him for playing in there, and whipped him. They would play in the mine every Saturday and Sunday. Billie Baker testified that about the year 1917 or 1918 he had possession of the driftmouth under a verbal contract made with A. L. Allais, and he and his brother Henry operated there for about two weeks. He did not think they mined any coal. The old opening had been there for fifteen or twenty years. Henry Baker testified that back when coal was high he and Billie got permission and worked the opening. They opened up the mine and went to dig coal. They were to pay a royalty of 10 cents or 20 cents, he had forgotten which. They kept the premises from three to six months. This was in the year 1918 or 1919.

On the other hand, A. L. Allais, president of the Columbus Mining Company, testified that he knew nothing about the driftmouth in question. The Columbus Mining Company never worked the driftmouth, and he never authorized any one to work it, or made any agreement with Billie Baker or Henry Baker to work the mine. Ed Allais, general manager of the company, denied that John E. Napier at any time ever told him that children were playing about the old entry, or that it was dangerous, and he ought to have it stopped up. Sam Allais, assistant mine superintendent, denied that W. M. Napier ever told him that the opening was dangerous, or that children were playing in and around the opening. Mrs. Elizabeth Sallyers, testified that on the day the body of Otis Napier was found in the driftmouth she saw him at her home, and he had in his hand a poke or coffee sack. A. R. Sallyers testified that he went to the driftmouth and brought Otis Napier's body out. Otis was lying flat on his back in a little puddle of water. About two feet from his body were a coffee sack, pick, and a lantern. Henry Richmond, who also went into the driftmouth, testified that he saw a coal sack, lantern, pick, and a carbide lamp near where the decedent's body had lain.

In view of the conclusion of the court, we deem it unnecessary to determine whether the driftmouth was an attractive nuisance within the meaning of that rule,

or to decide any other question than the one which we shall now proceed to consider. One who enters upon the land of another solely for his own pleasure, and without the owner's consent, is a trespasser. The owner is not required by law to maintain his premises in a reasonably safe condition for trespassers. On the contrary, trespassers take the premises as they find them, and the owner owes them no duty except to refrain from wanton or willful injury. There is an exception to this rule in favor of children of tender years, who are lured on the premises of another by an attractive nuisance. Though technically trespassers, they are not held responsible as such because of their indiscretion and tendency to follow their childish instincts. However, when a minor, injured while trespassing on another's property, has arrived at such an age as to remove him either presumptively or actually from the class of youthful and indiscreet persons, he is not entitled to the benefit of the doctrine of attractive nuisance unless he shows that on account of his undeveloped mental condition he is entitled to be classed with those for whose benefit the doctrine was created. Following this rule, we held in Louisville & N. R. Co. v. Hutton, 220 Ky. 277, 295 S. W. 175, 53 A. L. R. 1328, that a trespassing child fourteen years and seven months old, who was injured by playing with a loading crane, was not entitled to the benefit of the attractive nuisance doctrine in the absence of anything to show mental abnormality. In the same case we laid down the rule that a child fourteen years of age was presumptively outside of the protected class. Manifestly there must be a time when the presumption is conclusive. Otherwise the owner of premises will be under a duty to protect children of mature years, and even adults, if they can show that their minds are not normal. To avoid this liability the owner will have to undertake the impossible task of measuring the mental condition of every intruder, and if found deficient remove him from the premises, or maintain his premises in a reasonably safe condition for all classes of trespassers. In our opinion this would be carrying the doctrine, which was created for the benefit of children of tender years, to an extreme never contemplated. In the case of Central of Georgia R. Co. v. Robins, 209 Ala. 6, 95 So. 367, 36 A. L. R. 10, the Supreme Court of Alabama, after a review of the authorities, held as a matter of law that the attractive nuisance doctrine was not applicable to a fifteen year old child.

The reasoning of that opinion is sound, and we are constrained to the same view.

It follows that appellant's motion for a peremptory instruction should have been sustained.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.

Whole court sitting.