**BLUE DIAMOND COAL COMPANY,**
Appellant,

v.

*Franklin D. BUSH, by his Guardian,*
James Bush, Appellee.

Court of Appeals of Kentucky.

Feb. 3, 1961.

Logan E. Patterson, Pineville, for appellant.

Don A. Ward, S. M. Ward, Hazard, for appellee.

PALMORE, Judge.

Franklin D. Bush, 14 years of age, sustained severe injuries through contacting live wires of a power line maintained by Blue Diamond Coal Company. In this appeal by the company from a judgment entered on a verdict awarding him $15,000 in damages the only question submitted for review is whether the boy was contributorily negligent as a matter of law.

The company maintains an electric power station adjacent to its coal mine at Blue Diamond near the head of First Creek in Perry County. For several years it furnished electricity to the Bonnyman neighborhood, located 2½ miles down the creek, through a line of poles and wires running down the left side of the creek to a point about half the distance from Blue Diamond to Bonnyman, thence at right angles crossing the creek and a railroad (in that order) to a pole on the right side of the creek near a house occupied by a family named Owens, and thence again at right angles down the right side of the creek and railroad to Bonnyman. However, some time prior to the accident in question the electric service to all of the consumers in the Bonnyman neighborhood had been taken over by the Kentucky Power Company, which installed its own lines for transmission and distribution, whereupon Blue Diamond began to dismantle and take up its facilities in the area.

Appellee was injured during the night of August 10–11, 1957. He and a cousin of the same age, Homer Combs, who lived in or near Bonnyman, had been to a drive-in theater and returned to Bonnyman in the dead of the night, afoot. Franklin lived elsewhere but planned to spend the night with Homer. It seems that both boys were reluctant to go home for fear of being whipped for having gone off to the show and stayed out late, so upon arriving at Bonnyman they decided to spend the night with a mutual friend, Billy Ray Woolum, who lived some distance up the creek and beyond the Owens house heretofore mentioned. To reach this destination the two boys walked up the railroad track that paralleled the creek, and as they came opposite the Owens house they were playing "tag." Franklin struck Homer last and ran to the left, off the tracks, toward the Owens house. In so doing he came upon the aforementioned pole, which was located "about the width of this court room from the track" and within 2 or 3 feet of the edge of a small path or driveway leading to the Owens house. Though it was night he was able to see the pole immediately in front of

him with some loose wires dangling from its top and reaching within about four feet of the ground. Impulsively, but nonetheless intentionally, he seized two of these wires with his hands and was immediately rendered unconscious. Homer, who had stopped to tie a shoelace, saw Franklin "on fire" but was able to jerk him away from the wires, himself sustaining a mild shock in so doing.

Witnesses for the company testified that all of the wires extending from the Owens pole on down to Bonnyman had been removed and that the lines leading into that pole, though still intact, had been de-energized by cutting the "jumpers" at the pole on the other side of the creek. Hence they were positive (1) that there were no wires left hanging from the Owens pole and (2) that there was no flow of power across the creek to the Owens pole anyway, so that any wires at that place would have been dead at the time of the accident. Their theory was that the boys were climbing the pole on the other side of the creek where the wires had been cut, and that the mishap actually occurred there. But since the jury chose to believe the boys, as it had the right to do, none of this is material to our inquiry except as it may serve to round out the picture. Nor is it essential to consider what duty of care, if any, was owed by the company to the appellee under the particular circumstances, as the question is not raised on this appeal. Sufficiency of the evidence for submission of the company's negligence is tacitly conceded.

■ As we have said, Franklin Bush was 14 years of age at the time of the injury. He was in but the fifth grade of school. There was no evidence, however, that his intelligence and judgment were below that of a normal 14-year-old child. Thus he was presumptively capable of negligence and responsible for it, though the question of whether he was in fact negligent is not measured by the standard of the ordinary man, but by that of a person of the same age, experience and intelligence. Baldwin v. Hosley, Ky.1959, 328 S.W.2d 426, 430;

Jones v. Kentucky Utilities Co., Ky.1960, 334 S.W.2d 263, 265.

■ Franklin testified that although he had been up the railroad several times he had never noticed the wires. He knew that wires with electricity in them were dangerous, but "didn't think them wires had juice on 'em" because "they was down on the ground." As he expressed it in his pretrial deposition, "I thought wires on the ground weren't supposed to have any juice in them." (Judging the whole of his testimony, the expression "on the ground" must be taken to mean within reach.) That the accident occurred at night does not, we think, have any great significance, since under the circumstances it might just as well have happened in the day. So, in very simple terms, this case is reduced to the naked question of whether a normal 14-year-old boy is negligent as a matter of law when, in romping and playing, for no particular reason except the lively impulses of boyhood he grabs hold of wires hanging loose from a utility pole and within easy reach.

Mayfield Water & Light Co. v. Webb's Adm'r, 1908, 129 Ky. 395, 111 S.W. 712, 18 L.R.A.,N.S., 179; Columbus Min. Co. v. Napier's Adm'r, 1931, 239 Ky. 642, 40 S.W. 2d 285; Dennis' Adm'r v. Kentucky & West Virginia Power Co., 1935, 258 Ky. 106, 79 S.W.2d 377; and Louisville & N. R. Co. v. Hutton, 1927, 220 Ky. 277, 295 S.W. 175, 53 A.L.R. 1328, cited by appellant, all were decided on the basis of no negligence by the defendant. In the latter case, wherein a boy was injured while tampering with a crane on the defendant railroad company's property, the opinion points out that a 14-year-old boy is presumptively responsible for his contributory negligence. That principle we concede, but it was not the basis for the decision and it does not help to unlock this case.

In Carr v. Kentucky Utilities Co., Ky. 1957, 301 S.W.2d 894, a man was electrocuted while attempting to place an antenna as near as possible to a power line, and

in Vaught's Adm'x v. Kentucky Utilities Company, Ky.1956, 296 S.W.2d 459, an experienced electrical workman was killed when a 26-foot water pipe he was placing in a well contacted a nearby overhead power line. In each of these cases the adult victim was held negligent as a matter of law. In both, however, the decedent was definitely aware not only that the electric wires were present, but that they were live. The case before us is distinguished by the plaintiff's youth and by the circumstance that the wires in question were not intact, but severed and hanging loose near the ground, and he did not actually know they were energized.

It is our opinion also that the case is distinguishable from Jones v. Kentucky Utilities Co., Ky.1960, 334 S.W.2d 263, wherein a 15-year-old boy was electrocuted by contact with a power line strung near the top of a bridge superstructure he had climbed in search of pigeons. Had Franklin Bush climbed a pole or similar structure and thereby touched wires which he could have observed to be intact and in operable condition there might be some basis for analogy, but that is not the case. The Jones boy's negligence was not in the act of touching the wire (which probably was accidental and involuntary), but in placing himself in a position of peril on a narrow girder 60 feet above a river, where he might easily lose his balance, as in fact he evidently did. His death by accidental contact with the wire therefore was related to his negligence in assuming a precarious position the same as it would have been had he fallen into the river and drowned. Here we have a boy in a safe place on the ground, consciously and voluntarily seizing on what appeared to be a dead line. On close examination the legal problem is thus quite different from that in the Jones case.

In Lewis' Adm'r v. Bowling Green Gaslight Co., 1909, 135 Ky. 611, 117 S.W. 278, 279, 22 L.R.A.,N.S., 1169, one of the wires of a power line along a road or highway got down and parted in two places. It hung from the poles and partly on a fence or tree, sagging within some six or eight feet of the ground in front of the decedent's home. The decedent took hold of the wire, apparently to pull it down or out of the way, and was electrocuted. He was 70 years of age. Judgment on a directed verdict for the defendant power company was reversed. In concluding that the victim's contributory negligence was a jury question this court, by Judge O'Rear, said:

"As to the plea of contributory negligence: Ordinarily, when the facts are admitted, and where there is no conflict in the evidence, it is a question of law whether they constitute contributory negligence; but it is not always so. Although the facts may be admitted, still, if it be a question whether the act of the plaintiff at the time was such as an ordinarily prudent person would have done under the same circumstances, the jury ought to be permitted to say whether, under the circumstances, it was or was not negligence, but for which the defendant's negligence would have been harmless. If the act relied on is admitted and is clearly negligent, or is clearly not negligent, the court as a matter of law should by instructions to the jury dispose of the matter; but, although the proof is all one way as to the act, the act itself may be of such doubtful character as to render it an issue of fact, as much so as if the act itself were not of a doubtful character, but the evidence tending to establish or to disprove it was. If decedent knew that was a live wire, and knew the danger of touching it as he did, the act would be undoubtedly negligence on his part which would defeat a recovery for his injury. If he did not know, and had not reason to believe, it was a live wire, but, on the contrary, had reason to believe the electric current was not turned onto it, his was not such an act as an ordinarily prudent person might [not] have done under the same circumstances. At least it was not necessarily so."

The foregoing precedent fits the case at hand more securely than do any of the authorities cited for our consideration. Un-

der the particular circumstances of both cases the question of reasonable care addresses itself not to the victim's motive in touching the wires, but to his assumption that it was safe to do so. This being the ultimate point of comparison, certainly Franklin Bush had no more reason to believe the wires were live than did Mr. Lewis. Therefore, the Lewis case is dispositive of this one. We conclude that the question of contributory negligence was for the jury and that the trial court did not err in refusing a peremptory on that ground.

The judgment is affirmed.