**Doyle COUCH, Appellant,**

v.

**Marie HOLLAND, Infant, through and by her father and next friend, Bennie Holland, Appellee.**

Court of Appeals of Kentucky.

Dec. 18, 1964.

Robert L. Milby, Hamm, Taylor & Milby, London, Neville Smith, Manchester, for appellant.

Lester H. Burns, Jr., John M. Lyttle, Manchester, for appellee.

CLAY, Commissioner.

Appellee, a 14 year old female pedestrian, was struck and injured by an automobile driven by appellant on Highway 421 in

Clay County, Kentucky. A jury awarded her $6,000.

Before the trial appellant propounded Interrogatory No. (5) to appellee as follows:

"State the specific acts of negligence which the plaintiff will rely upon in the cause of action for damages herein."

The appellee answered:

"The specific acts of negligence upon which plaintiff will rely on in her cause of action for damages are: The defendant failed to keep his automobile under reasonable control at all times herein complained of."

At the trial appellee tried to introduce evidence that appellant was speeding at the time of the accident. Appellant objected on the ground that appellee, having stated in her answer to Interrogatory No. (5) that she would rely on certain specific acts of negligence of appellant—the failure of appellant to keep his vehicle under reasonable control at all times—should not be allowed to predicate her cause of action upon "other" acts of negligence (speeding) not stated in the answer to the interrogatory.

■ We do not need to decide the abstract question of whether appellee could have predicated her cause of action on specific acts of negligence "other than" those stated in her answer to Interrogatory No. (5), because she has not sought to do so. In order for appellee to prove appellant failed to keep his vehicle under reasonable control, she could show conditions or factors affecting such control, as traveling at excessive speed, driving with one hand, or failing to keep a proper lookout. See 7 Am.Jur.2d, Automobiles and Traffic, sec-

tion 354 (page 901); 28 A.L.R. 953. Thus, when appellee offered evidence that appellant was speeding, she was not relying on "new acts" of negligence not stated in her answer to Interrogatory No. (5). Rather, she was offering evidence in support of and within the scope of her contention that appellant failed to keep his automobile under reasonable control.[1]

Appellant next contends that under either of two theories of this case, appellee was guilty of contributory negligence as a matter of law. Appellee, a normal 14 year old girl at the time of the accident, testified that she crossed from the south to the north side of Highway 421 to get the mail. From the mailbox she had a clear view west, the direction from which appellant approached, for approximately 600 feet. She testified:

"Q. 10. After you went over to get the mail did you stand over there for awhile or did you turn around and come back?

"A. I stood there long enough to look and see and I didn't see nothing coming.

"Q. 13. And you looked both ways?

"A. Yes.

"Q. 14. As you looked back toward Manchester from where you were, you could see a long ways, is that right?

"A. Yes.

"Q. 15. After you looked you started to cross the road, is that right?

"A. Yes.

"Q. 16. You didn't stop out in the road after you started across the road?

---

1. Some question may be raised as to the propriety of this interrogatory. See United States v. Columbia Steel Company, D.C., 7 F.R.D. 183; General Motors Corp. v. California Research Corp., D.C., 9 F.R.D. 568; Kyker v. Malone Freight Lines, D.C., 17 F.R.D. 393. In any event, particularly in an automobile accident case where the duties of the driver are interrelated, the answer to such an inquiry under CR 33 should be realistically construed rather than treated as a fatal move in some sort of game.

"A. No.

"Q. 17. You didn't look any more after you started across the road, did you?

"A. No.

"Q. 18. You were just looking straight ahead as you went across the road, were you not?

"A. Yes."

Appellant's version of the accident is that appellee ran out from behind an approaching coal truck which he passed 50 to 75 feet from the point of the accident. Appellee testified she saw neither the coal truck nor appellant's car. Appellant's contention is that whether the coal truck was present or not, appellee was negligent as a matter of law when she walked "blindly into the path of a vehicle which she could have seen if she had simply taken the expedient of looking."

■■ A 14 year old child is "presumptively capable of negligence and responsible for it, though the question of whether he was in fact negligent is not measured by the standard of the ordinary man, but by that of a person of the same age, experience and intelligence." Blue Diamond Coal Co. v. Bush, Ky., 342 S.W.2d 694, 696. See also Baldwin v. Hosley, Ky., 328 S.W.2d 426. Whether the question of contributory negligence is for the jury or is a question of law was discussed in detail in Lewis' Adm'r v. Bowling Green Gaslight Co., 135 Ky. 611, 117 S.W. 278, 279, 22 L.R.A.,N.S., 1169, when this Court said:

"If the act relied on is admitted and is clearly negligent, or is clearly not negligent, the court as a matter of law should by instructions to the jury dispose of the matter; but, although the proof is all one way as to the act, the act itself may be of such doubtful character as to render it an issue of fact, as much so as if the act itself were not of a doubtful character, but the evidence tending to establish or to disprove it was."

This passage was quoted with approval by this Court in Blue Diamond Coal Company v. Bush, Ky., 342 S.W.2d 694, a case in which a 14 year old boy was severely injured when, in romping and playing, he grabbed some loose wires hanging from a utility pole. In that case the Court held that whether he was contributorily negligent was for the jury on the theory that his act was of sufficiently doubtful character that it might have been the act of an ordinarily prudent person of the same age and intellect.

■ We think the case at hand is different because we agree with appellant that under either view appellee's act was clearly negligent. By appellee's own testimony she walked across a busy highway, not at an intersection, with unobstructed vision for approximately 600 feet in the direction from which appellant's car came, without making any attempt to ascertain traffic conditions after she started her journey. If we assume that her version of the accident is correct—that she looked both ways before crossing the road, and that she saw neither the coal truck nor appellant's automobile—the question is immediately posed: "Why did she not see?" The physical facts establish that appellant's car must have been in plain view if she looked immediately before starting across, which would bring the situation squarely within the ruling of Tarter v. Wiggington's Adm'x, 310 Ky. 393, 220 S.W.2d 829. In that case a pedestrian, who had unobstructed vision and who alleged that he looked both ways, stepped into a line of traffic at a point between intersections. We held that he was contributorily negligent as a matter of law and, at page 830, said:

"No reasonable man could give any credence to plaintiff's statement that he did look in that direction. It would have been impossible to look and not see the approaching automobile."

See also Jordon v. Clough, Ky., 313 S.W.2d 581.

█ If, on the other hand, appellant's car had not rounded the curve and had not come into view when appellee looked, the question then becomes: Did appellee exercise reasonable care for her own safety when, after looking in both directions, she thereafter crosses a busy highway without ever looking in either direction again? We think not. The plaintiff's duty to protect herself from harm did not cease as soon as she stepped onto the highway. On the contrary, she was under a continuing duty to keep watch for her own protection when she left a zone of safety and went out onto the open highway. Clark v. Smitson, Ky., 346 S.W.2d 780. Her initial lookout at the side of the highway would no more absolve her from her subsequent failure to keep a continuous watch to protect her safety than would an initial glance down the highway by appellant as he rounded the curve have relieved him from a total failure to look at the highway again.

█ If appellant's version of the accident is assumed, still it would have been negligent for appellee to step out of the westbound lane from behind a large coal truck which had just passed, and into the eastbound lane without ever looking to see whether an automobile was coming. This version would place the case within the rationale of Jordon v. Clough, Ky., 313 S.W.2d 581, where we held that it was contributorily negligent as a matter of law for the plaintiff, crossing from the east to the west side of the road, to step out from behind a northbound truck into the path of a southbound car.

█ In addition to appellee's common law duty to exercise ordinary care to protect herself, she was under a statutory duty of a pedestrian to surrender the right of way to a motor vehicle when the pedestrian is crossing the road at any point other than at a marked crosswalk or an intersection.

KRS 189.570(4) (a). In Music v. Waddle, Ky., 380 S.W.2d 203, 207, 208, we said:

"Unless this provision is to be reduced to something less than a statutory mandate, the necessity of keeping a reasonable lookout for his own safety cannot end at the curb, but must continue until he clears the street, because for him the statute has declared the street a danger area as a matter of law."

In Louisville & Nashville Railroad Company v. Dunn, Ky., 380 S.W.2d 241, 245, we said:

"* * * every person has a continuing duty of caution for his own safety, and this duty is not discharged by a momentary caution that is prematurely abandoned."

█ The traffic pattern on a heavily traveled highway is constantly changing, and both the pedestrian and the driver of a vehicle are under a continuing duty to exercise ordinary care for their own safety. In our opinion appellee, who walked blindly into the path of a moving vehicle which she could have seen if she had looked, failed to exercise that standard of ordinary care which could be expected of a normal child of her age, experience and intelligence. Therefore, we hold that she was contributorily negligent as a matter of law.

The final question is whether the doctrine of last clear chance or discovered peril is applicable. In the recent case of Severance v. Sohan, Ky., 347 S.W.2d 498, we said:

"Suffice it to say that in pedestrian cases the theory (last clear chance) does not come into play until the victim arrives in or so near to the path of the oncoming vehicle as to be in danger of being struck by it. Whatever the driver of the vehicle should have seen and could have done prior to that

moment is a matter of antecedent negligence, which is erased from consideration if the victim is found to have been contributorily negligent. * * * Under the authorities cited above there must be evidence authorizing the jury to find that the motorist's last chance to avoid the accident after the victim was in a position of peril was in fact a *clear* chance, and not merely a speculative possibility."

■ In these pedestrian cases we often have a situation where two parties are acting negligently in such a manner that their conduct is likely to produce an accident. The significant point in time is reached when the pedestrian arrives at or near a position of peril. Before the doctrine of last clear chance may be invoked, the plaintiff has the burden to establish by substantial evidence that at the time he reached his position of peril, the motorist was in fact far enough away to stop or swerve in time to prevent the accident. Stated another way, there must be proof to support a fair inference that at a particular point of time it was too late for the pedestrian to avoid the motorist but not too late for the motorist to avoid the pedestrian. In the present case such evidence is lacking.

In order to determine whether appellant could have prevented this accident we must know approximately how far he was from appellee when she started to cross the road or came into his view. If he was a very few feet away at that time, it would have been impossible for him to have avoided the accident. If he had been 400 feet away, then it is probable the accident could have been averted. In the instant case there was no evidence from which we could determine even the relative position of appellant's car when appellee began her journey. It must be noted that appellee herself did not locate appellant's car at any place at any time. Appellant's testimony put him in a position where he was unable to avoid the accident.

The only additional evidence shedding any light on this question shows that appellant skidded 45 feet before the impact; that the car began skidding when it was in the eastbound lane and veered to the left toward the middle of the road, and that it struck appellee with the right headlight and came to stop only 15 feet beyond the point of impact, with one wheel slightly over the center line. These facts repel an inference that appellant failed to take steps to prevent the accident and therefore committed an independent act of negligence after appellee had negligently put herself in a position of peril.

In Clemons v. Harvey, Ky., 385 S.W.2d 66 (decided December 11, 1964), the driver of an automobile which struck a pedestrian crossing from his left to his right (as here) admittedly observed the pedestrian when he was 375 feet away. Such fact distinguishes that case from this one. The principles recognized in Riley v. Hornbuckle, Ky., 366 S.W.2d 304 (although the case had not gone to trial), are not inconsistent with those we have above stated.

■ It is our conclusion that appellee failed to prove any facts which would justify a fair inference that appellant had, or negligently failed to take advantage of, a last clear chance to avoid this accident after she had placed herself in a position of peril. Actually appellant had no more (if indeed as much) of a last chance than did appellee. See Severance v. Sohan, Ky., 347 S.W.2d 498. It was error to instruct on this issue.

Since appellee cannot predicate her recovery on the doctrine of last clear chance, and since her own negligence was at least a substantial contributing factor, a verdict should have been directed for appellant.

The judgment is reversed, with directions to enter judgment for appellant.