**Geraldine WARD, Administratrix of the Estate of William Cecil Ward, Deceased, Appellant,**

v.

**OWENSBORO RIVER SAND AND GRAVEL COMPANY, Appellee.**

Court of Appeals of Kentucky.

Sept. 20, 1968.

Ronald M. Sullivan, Sandidge, Holbrook, Craig & Hager, Owensboro, for appellant.

Clarence Bartlett, Woodward, Bartlett & McCarroll, Owensboro, for appellee.

STEINFELD, Judge.

### AFFIRMING

William Cecil Ward, age 54, was struck and killed on a late afternoon in August 1965 by a truck owned by Owensboro River Sand and Gravel Company (Owensboro) while he was working for State Contracting & Stone Company (State) on a construction job and the truck was hauling material for the same project. Ward's administratrix sued Owensboro. After she had completed the introduction of evidence, Owensboro's motion for a directed verdict was sustained. This appeal is from a judgment dismissing. We affirm.

For many years for several employers Ward had worked, around heavy road construction machinery. S. J. Boone Company was the prime contractor for the widening of U. S. Highway 60 in Daviess County and State was the paving subconstractor. Owensboro had contracted with State to haul rock to the job site.

The two existing lanes of the highway were open for regular traffic which was heavy and noisy but neither of the new lanes was completed. On either side of the old highway were excavations approximately twelve feet wide and twelve inches lower than the grade of the existing highway. On the south side where the accident happened concrete work, curbing and gutters had been completed.

To unload rock into the "spreaders" Owensboro's drivers were required to back the trucks into the excavated area (channel). After entering the channel the trucks could not be turned. This procedure had been followed constantly for a long period and Ward had been working around this activity for days, possibly weeks or months. At the time Ward was struck the distance from the truck entrance of the excavated channel to the spreader box was approximately 400 feet.

Ward had been directed by his foreman to shovel the excavated area clean of debris, clods of earth, rocks, etc. so that the contractual specification of $\frac{1}{10}$ inch of tolerance would be met. Ward was performing this task when DePriest, one of Owensboro's drivers, drove his truck into the excavated area. The superintendent for State left the spreader box and approached the truck. He motioned for it to start backing, then he turned and walked back toward the spreader box. As he passed Ward he noticed him performing the task assigned to him at a point about 150 feet from where the truck started backing.

The driver was asked and answered:

"Q. 23. You were aware, or were you aware that there was a man working in the excavated portion whom later you learned was Mr. Ward?

"A. Yes, sir.

"Q. 24. The last time that you saw him before you got in the cab of your truck, what was he doing?

"A. I thought he was getting up on the side of Highway 60 there.

"Q. 25. All right, what made you think that?

"A. Well, he was standing right beside it and made the motion of getting up on it. He made the motion of taking one step to get up there.

"Q. 26. He was facing in a northerly direction?

"A. That is right.

"Q. 27. Did he have a shovel in his hand?

"A. Yes, sir.

"Q. 28. Had you seen him working in there?

"A. Yes, sir.

"Q. 29. And can you tell the jury what his job looked like to you, what he was doing there?

"A. Taking loose rock and stuff that falls off of the old road bed—the old road 60, down in that roadbed taking it out and throwing it out of the way.

"Q. 30. And some of that stuff he was taking out would be just below the old road bed where it falls off, wouldn't it?

"A. Where it goes down into the new road bed there.

"Q. 31. That is where you saw him standing just before you got in the cab of your truck?

"A. Yes, sir."

Later he admitted that he never saw Ward in his rear view mirror or otherwise and that he did not sound his horn although he was blind to some area behind him. No one was observing for him. The testimony as to the distance the truck traveled before striking Ward is conflicting, varying from 20 to 150 feet.

A disinterested witness, John Clark, alighted from an automobile on the highway. He saw the truck backing toward Ward who was then in the center of the excavation about 15 feet from the truck. With shovel in hand Ward was walking toward the truck either looking to his left or downward. Clark shouted a warning to Ward and the driver but neither heeded it and the center of the bed of the truck hit Ward and ran over him. Clark reached the side of the truck and signaled to the driver to stop.

Appellant asserts that Ward was not guilty of contributory negligence as a matter of law, that this issue was for the jury. She relies on Berry v. Irwin, 220 Ky. 708, 295 S.W. 1020 (1927), in which a man working on road construction was struck by a backing truck which was hauling material for the job. We held that the question of the workman's contributory negligence was for the jury. Owensboro argues that the cases differ in that in Berry an unusual circumstance had arisen because a roller blocked a part of the road and we said the driver " * * * should have known that when he ran around the roller the men at work on the side of the road would be in danger". In answering the contention that "Irwin was guilty of contributory negligence in not keeping a lookout for the truck", we said "But ordinarily the truck ran in the center of the road and not on the side where Irwin was working." The difference in facts distinguishes the cases.

Appellant cites Lobred v. Mann, Ky., 395 S.W.2d 778 (1965), in which a man, working in a "man hole" in the street, was struck by an automobile as the workman emerged. Holding that the plaintiff was not negligent as a matter of law we pointed out that one whose duties require that he work in a street cannot perform his work and keep a constant lookout for motor vehicles. In Lobred the "man hole" was marked and somewhat protected by a barricade draped with flags which the car struck before hitting the workman. There was nothing to protect Ward from the constantly backing trucks except his own vigilance.

The administratrix claims that R. E. Gaddie, Inc. v. Evans, Ky., 394 S.W.2d 118 (1965), supports her argument that it was error to dismiss the action. In Gaddie two inspectors on a road paving job were kneeling down while they were examining the work. They were joined by a spectator. A driver for the stone hauler backed a loaded truck into one inspector and the spectator. Both injured men sued six parties involved on the job and obtained a verdict against four. Only Gaddie, the paving contractor and Hickerson, his driver, appealed. The evidence for the paving contractor was that the truck driver "was directed to stop his truck as it was being backed in the curb lane but Gaddie's employees all deny that they directed Hickerson to start up again in a different lane". There was no claim that the injured spectator was negligent but it was contended that the spectator was barred from recovery by his own contributory negligence. We held that a jury should determine if a reasonable man "may have been entitled to consider this location safe" since the inspectors "were properly performing their duties there". It should be noted that the backing truck changed lanes and there was an issue as to whether a signal to stop the truck was ignored.

The other authorities relied on for reversal were Guyan Chevrolet Co. v. Dillow, 264 Ky. 812, 95 S.W.2d 796 (1936) and Clem v. Ball, Ky., 237 S.W.2d 839 (1951). In Guyan a pedestrian on a sidewalk collided with a car being backed into the street and in Clem a motorist was pouring antifreeze into the radiator of his automobile when the vehicle parked in front was backed into him. The facts in Guyan and Clem are not analogous to the case before us and the law announced therein is not applicable.

We wrote in Couch v. Holland, Ky., 385 S.W.2d 204 (1964), "In our opinion appellee, who walked blindly into the path of a moving vehicle which she could have seen

if she had looked, failed to exercise that standard of ordinary care which could be expected of a normal child of her age, experience and intelligence. Therefore, we hold that she was contributorily negligent as a matter of law."

Ward's experience should have alerted him to the dangers. The uncontradicted testimony of Clark revealed that Ward paid no attention to the backing truck. He was not exercising that standard of ordinary care which could be expected of him. He was "contributorily negligent as a matter of law." Couch v. Holland, supra; Southern Bell Telephone and Telegraph Co. v. Walters, Ky., 413 S.W.2d 615 (1967) and Cassidy v. Briar Bowl, Inc., Ky., 424 S.W. 2d 808 (1968). For discussion of a related subject see Louisville Railway Co. v. Offutt's Adm'x, 246 Ky. 508, 55 S.W.2d 391 (1932).

The judgment is affirmed.

All concur.